UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC, as Trustee, | : |
|  | : |
|  | : |
| Plaintiff, | :      Case No. 15 Civ. 8725 (GBD) |
|  | : |
| v. | :      ECF CASE |
|  | : |
| SANOFI, | : |
|  | : |
| Defendant. | : |
|  | : |

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Sanofi*


Dated: April 1, 2016

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.     PLAINTIFF'S CLAIM WITH RESPECT TO THE PRODUCT SALES
MILESTONES MUST BE DISMISSED ............................................................... 2

        A.     Plaintiff's Claim With Respect To PSM1 Is Premature ........................... 3

        B.     Plaintiff Concedes That Its Claim With Respect To PSM2, PSM3 And
PSM4 Is Premature ................................................................................... 5

II.    PLAINTIFF'S IMPLIED COVENANT CLAIM MUST BE DISMISSED ...................... 6

        A.     The Conduct Underlying Plaintiff's Implied Covenant Claim Is No
Different Than The Conduct Underlying Plaintiff's Contract Claims .................... 6

        B.     The Damages Plaintiff Seeks Underscore The Need For Dismissal Of The
Implied Covenant Claim ........................................................................... 8

CONCLUSION……………………………………………………………………………...9

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................... 3

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.,*
    307 F. Supp. 2d 553 (S.D.N.Y. 2004)................................................................... 6, 8

*CSI Inv. Partners II, L.P. v. Cendant Corp.,*
    507 F. Supp. 2d 384 (S.D.N.Y. 2007)....................................................................... 7

*Deer Park Enters., LLC v Ail Sys., Inc.,*
    57 A.D.3d 711 (2d Dep't 2008)................................................................................. 8

*Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.,*
    810 F.3d 861 (2d Cir. 2015)...................................................................................... 8

*Dialcom, LLC v. AT&T Corp.,*
    20 Misc. 3d 1111(A) (Sup. Ct. Kings Cty. 2008) .................................................... 7

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research,*
    2016 WL 205445 (S.D.N.Y. Jan. 15, 2016) ............................................................. 4

*Luxury Autos of Huntington, Inc. v. Volkswagen Grp. of Am., Inc.,*
    49 Misc. 3d 1207(A) (Sup. Ct. Nassau Cty. 2015) .................................................. 7

*N.Y. State Ct. Clerks Ass'n v. Unified Ct. Sys. of N.Y.,*
    25 F. Supp. 3d 459 (S.D.N.Y. 2014)......................................................................... 5

*iWon, Inc. v. Ourhouse, Inc.,*
    192 Misc. 2d 1 (Sup. Ct. Westchester Cty. 2001).................................................... 5

*Rojas v. Don King Prods., Inc.,*
    2012 WL 760336 (S.D.N.Y. Mar. 6, 2012) .............................................................. 9

*Spread Enters., Inc. v. First Data Merch. Servs. Corp.,*
    2012 WL 3679319 (E.D.N.Y. Aug. 22, 2012)......................................................... 7

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................. 8

WEIL:\95670467\1\71937.0101

# PRELIMINARY STATEMENT[1]

In its Opening Brief, Sanofi demonstrated that Counts II and III of the Complaint must be dismissed because:  (i) there are months (in the case of PSM1) and years (in the case of PSM2-4) left to hit the Product Sales Milestones and, thus, Plaintiff's claim to recover amounts attendant thereto is not currently ripe; and (ii) the implied covenant claim is impermissibly redundant of the express contract claims.  For the reasons explained below, Plaintiff fails to overcome either showing in its Opposition.

*First*, Plaintiff does not deny that there remains time to achieve PSM1.  Instead, it posits that the second or third quarter of 2015 was the "first instance" (selectively quoting the CVR Agreement) in which PSM1 *should have* been achieved.  However, this is an argument that finds *no* support in well-pled factual allegations in the Complaint.  In addition, it is based on a fundamental misreading of the CVR Agreement:  the "first instance" language (*see* Compl. Ex. A at § 1.1) simply refers to Sanofi's obligation to make the associated payments within a specified number of days upon achieving a Product Sales Milestone (*i.e.*, instead of requiring CVR holders to wait until the end of the relevant measuring period); it does not permit Plaintiff to attempt to accelerate the contractually agreed-upon deadlines to achieve the milestones, as Plaintiff impermissibly seeks to do through this action.  *See* Point I.A, *infra*.

*Second*, Plaintiff offers no meaningful response at all with respect to PSM2-4.  Plaintiff merely argues that "[t]he failure to meet PSM1 also delayed achievement of and reduced the available measuring periods for the remaining Product Sales Milestones, causing further injury to

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Defendant's opening brief in support of the motion (the "Opening Brief" or "Br."), filed on January 29, 2016.  Plaintiff's opposition brief is referred to herein as the "Opposition" or "Opp."

the Holders." Opp. at 4 n.5.[2] However, PSM2-4 are *separate* milestones that are subject to *different* sales metrics and measuring periods, and there is no dispute -- nor could there be, given the unambiguous language of the CVR Agreement -- that Sanofi has until December 31, 2020 to achieve them. Indeed, nowhere in the Complaint does Plaintiff claim that any of PSM2-4 already should have been achieved. Accordingly, regardless of how many measuring periods Sanofi has left to achieve these milestones (none of which are guaranteed), any claim for recovery would be premature prior to January 1, 2021. On this point, the Opposition is silent. *See* Point I.B, *infra*.

*Finally*, Plaintiff cannot salvage its implied covenant claim by repeatedly stating that it is based on a different contractual provision than Plaintiff's express contract claims. Rather, courts look to the *conduct* underlying the implied covenant and express contract claims in assessing the claims' redundancy -- and, here, that conduct is the same. Dismissal is therefore required. *See* Point II, *infra*.

## ARGUMENT

## I.   PLAINTIFF'S CLAIM WITH RESPECT TO THE PRODUCT SALES MILESTONES MUST BE DISMISSED

In its Opening Brief, Sanofi demonstrated that Plaintiff's claim with respect to PSM1-4 is premature because there remains time for those milestones to be achieved -- and, as a result, Plaintiff cannot *currently* plead any cognizable damages. *See* Br. at 14-17. In fact, Plaintiff concedes that Sanofi has until June 30, 2016 to achieve PSM1 (Opp. at 5)[3] and that PSM2-4 can be achieved any time before December 31, 2020 (*id.* at 12). Nevertheless, Plaintiff contends that

---

[2] *See also id.* at 12, 17 n.13 (same).

[3] Plaintiff acknowledges that the Complaint identifies December 31, 2016 as the deadline to achieve PSM1. *See id.* at 10 n.9. However, Plaintiff now states in the Opposition that the measuring period for PSM1 ends on June 30, 2016. *See id.* Of course, neither date has passed (*i.e.*, the claim is premature regardless), and it is therefore unnecessary for the Court to resolve this issue in deciding this motion.

its claim with respect to these milestones is ripe because:  (i) PSM1 "should have been met" as early as the second quarter of 2015 (*id.* at 4); and (ii) the failure to achieve PSM1 in the second or third quarter of 2015 "delayed achievement of and reduced the available measuring periods" for PSM2-4 (*id.* at 4 n.5).  Both arguments fail.

### A.   Plaintiff's Claim With Respect To PSM1 Is Premature

Plaintiff asserts that PSM1 would have been achieved in the second or third quarter of 2015 if Sanofi had simply used the requisite Diligent Efforts.  Opp. at 11 (citing Compl. ¶ 89); *see also id.* at 15, 16.  The Complaint, however, contains *no* support for that assertion, and it should not be credited on a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  Although Sanofi highlighted this deficiency in its Opening Brief (at 15 n.10), the best Plaintiff musters in response is the equally conclusory statement that "numerous facts support Plaintiff's claim."  Opp. at 16 n.12.  But "allegations that Sanofi failed to use Diligent Efforts to achieve PSM1" (*id.*) are *not* the same as facts supporting the contention that PSM1 would have been achieved in 2015 had Diligent Efforts been employed (none of which the Complaint alleges).  Thus, while Plaintiff is correct that the Court "'must accept all *well-pleaded factual allegations* in the complaint as true'" (*id.* (quoting *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 559 (S.D.N.Y. 2011) (Daniels, J.) (emphasis added)), here, there is only a naked assertion.

Similarly flawed is Plaintiff's contention that CVR holders have suffered a present injury because "the CVR Agreement provides that a Product Sales Milestone is achieved at the '*first instance*' that the sales hit a targeted amount within a particular measuring period."  Opp. at 16 (quoting Compl. Ex. A at § 1.1) (emphasis added); *see also* Compl. ¶ 89.  According to Plaintiff (again, without reference to any market data, sales data or any other analytical support), that *should have* been the second or third quarter of 2015.  *See* Opp. at 11.  However, Plaintiff's "say-so" is not enough.  What is more, Plaintiff's argument relies on a fundamental misreading of the

WEIL:\95670467\1\71937.0101

CVR Agreement.  Contrary to Plaintiff's interpretation, the CVR Agreement's reference to the "first instance" concerns *when*, after a Product Sales Milestone *is achieved*, payment must be made.  It does not accelerate the contractually agreed-upon deadline for achieving any milestone, as Plaintiff seeks to do here.[4]

Plaintiff's other arguments with respect to PSM1 also fall short.  First, the fact that Sanofi has disclosed that, based on actual sales trends to date, it does not believe PSM1 will be met (*see* Opp. at 17), is *not* the equivalent of *conceding* that PSM1 will, in fact, not be met.  Sanofi has made *no* such concession and *no* such disclosure.  There is still time to achieve the milestone and, until then, Plaintiff has no present damages.  *See* Br. at 14-17.

Second, Plaintiff fails to refute Sanofi's showing (*id.* at 17 n.14) that this is a case in which the "nominal damages" law cited (and refuted) in the Opening Brief should not apply. Here, it is not that damages are unclear or difficult to estimate but, instead, that the facts relevant to whether the CVR holders have even been harmed have yet to play out, as Plaintiff repeatedly concedes in the Complaint.[5]  Where that law instead makes sense, and, unsurprisingly, where it has been applied, is where, unlike here, amounts under a contract are already due and owing or, as in *Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*, 2016 WL

---

[4] *See* Compl. Ex. A at § 1.1 (emphasis added):

"Product Sales Milestone #1" means the *first instance* in which the sum of (x) the aggregate Major Market Product Sales for each Qualifying Major Market plus (y) the aggregate Product Sales achieved in all countries that are not Qualifying Major Markets during the four (4)-calendar quarter period that begins on the first anniversary of Product Launch equals or exceeds a total of four hundred million dollars ($400,000,000).

"Product Sales Milestone Payment Date" means, with respect to each Product Sales Milestone, the date that is twenty (20) Business Days following notice of the achievement of such Product Sales Milestone in the applicable Product Sales Statement.

[5] *See* Compl. ¶ 15(a) (alleging that Sanofi's conduct has merely "harm[ed] the prospects of reaching the Product Sales Milestones"); *see also id.* ¶¶ 103, 105, 113 (alleging that Sanofi's supposed misconduct has "adversely affected" Sanofi's ability to meet the Product Sales Milestones).

205445 (S.D.N.Y. Jan. 15, 2016), a case cited by Plaintiff (Opp. at 19), *ongoing* payment obligations not subject to any sales thresholds -- *i.e.*, obligations due and owing upon *any* sales -- are at issue.  In stark contrast, Plaintiff is not entitled to *one cent* with respect to PSM1 unless and until the relevant Lemtrada sales surpass $400 million.  The facts of this case, accordingly, are directly analogous to the facts in the cases Sanofi relied upon in its Opening Brief, all of which dismissed contract claims on the pleadings for lack of damages.  *See* Br. at 14-16 (citing cases).[6]  The Court should do the same here.

### B.    Plaintiff Concedes That Its Claim With Respect To PSM2, PSM3 And PSM4 Is Premature

Plaintiff does not address PSM2-4 in the argument section of its Opposition other than the assertion that CVR holders "are presently damaged because the payments [associated with these later milestones] were delayed by Sanofi's failure to use Diligent Efforts," as well as "by Sanofi's reduction in the number of measuring periods in which the later Product Sales Milestones can be reached."  Opp. at 17 n.13; *see also id.* at 4 n.5, 12, 19 (same).  Putting aside that the Opposition fails to respond to the majority of Sanofi's arguments with respect to PSM2-4 (*see* Br. at 14-17), which, in and of itself, is sufficient reason to grant the instant motion,[7] Plaintiff's assertion simply cannot be reconciled with the facts that:  (i) the payments associated

---

[6] Plaintiff's attempts at distinguishing these cases (*see* Opp. at 18-19) all miss the mark.  For instance, Plaintiff argues that *iWon, Inc. v. Ourhouse, Inc.*, 192 Misc. 2d 1 (Sup. Ct. Westchester Cty. 2001) (cited at Br. at 16), does not apply because "the defendant had until a specified date -- November 4, 2001 -- to register a targeted level of users for an Internet service provided by a third party . . . and was required to refund a certain amount of money to the plaintiff if the defendant did not reach its target by that date."  Opp. at 18 (citing *iWon*, 192 Misc. 2d at 4).  Yet, that is precisely the situation here:  Sanofi has until a "specified date" to achieve PSM1, and that date has not yet passed.  Similarly, Plaintiff challenges Sanofi's other citations because the cases "involve either the non-occurrence of a claim predicate . . . or allegations of 'increased risks' of injury, rather than allegations of actual injury."  Opp. at 18-19 (citations omitted).  But, again, that is precisely the situation here:  the deadline for PSM1 has not yet passed, and until then, there can be no *actual* injury but, instead, just diminished "prospects of reaching" the milestone. Compl. ¶ 15(a).

[7] *See, e.g., N.Y. State Ct. Clerks Ass'n v. Unified Ct. Sys. of N.Y.*, 25 F. Supp. 3d 459, 469 (S.D.N.Y. 2014) (holding that "'a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims'") (citation omitted).

5

with PSM2-4 are *not* now due and owing (nor are those payments guaranteed); and (ii) Sanofi

has until December 31, 2020 to achieve those milestones.  *See id.* at 4-5; Compl. Ex. A at 11-12.

Even worse, Plaintiff's theory, apparently, is that the alleged breach of PSM1 rendered

breaches of PSM2-4 a *fait accompli* -- that Sanofi's alleged "failure to meet PSM1 . . . delayed

achievement of and reduced the available measuring periods for the remaining Product Sales

Milestones. . . ."  Opp. at 4 n.5; *see also* Compl. ¶ 103.  This is another fundamental misreading

of the CVR Agreement, given that PSM2-4 are *separate* milestones subject to *different* metrics

and measuring periods.  Br. at 16 n.11.  In other words, the circumstances necessary to satisfy

PSM2-4 are wholly independent of PSM1.  Moreover, in contrast to its conclusory assertion with

respect to PSM1, Plaintiff does not (because it cannot) allege or argue that Sanofi already should

have achieved PSM2, PSM3 or PSM4.

## II.    PLAINTIFF'S IMPLIED COVENANT CLAIM MUST BE DISMISSED

### A.    The Conduct Underlying Plaintiff's Implied Covenant Claim Is No Different Than The Conduct Underlying Plaintiff's Contract Claims

In its Opening Brief, Sanofi demonstrated that Plaintiff's implied covenant claim cannot

stand alongside Plaintiff's contract claims because the same underlying conduct forms the basis

of each of Plaintiff's claims.  *See* Br. at 17-20.  In response, Plaintiff attempts to draw a

distinction between the contractual provisions relied upon for each of its claims -- namely, that

its express contract claims relate to § 7.10 of the CVR Agreement (the Diligent Efforts

provision) and its implied covenant claim relates to § 10 of the CVR Agreement (the Failure

Purchase Option).  *See* Opp. at 20-21.  This is irrelevant to the analysis.

*Conduct* is the touchstone for determining redundancy between implied covenant and

express contract claims.  *See, e.g.*, *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d

553, 564 (S.D.N.Y. 2004) (dismissing implied covenant claim as redundant where "[t]he

WEIL:\95670467\1\71937.0101

predicate conduct for the claims is the same, despite the attempt to emphasize different aspects of the conduct in the implied covenant claim"); *see also* Br. at 17-20.   Courts have therefore resisted similar attempts to look past the conduct alleged in connection with a complaint's implied covenant and express contract claims by pointing to different contractual provisions applicable to each.   *See, e.g.*, *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, 2012 WL 3679319, at *5 (E.D.N.Y. Aug. 22, 2012) (rejecting argument that claims are "based on different facts" just because "[they] are based on two different contract provisions").   Here, the conduct relevant to Plaintiff's implied covenant and express contract claims is *exactly the same*:   Sanofi's alleged "delay in obtaining U.S. regulatory approval" of Lemtrada and "fail[ure] to adequately promote and commercialize [it]" thereafter.   Compl. ¶ 118; *see also* Br. at 18.[8]

Indeed, Plaintiff does not contend otherwise but, instead, merely asserts that "the existence of overlapping conduct is not fatal" to an implied covenant claim.   Opp. at 21.   Yet, the cases Plaintiff cites as support for that proposition (*see id.* at 21 n.19) sustained implied covenant claims on the ground that, despite "some overlap" with the plaintiffs' express contract claims, the implied covenant claims involved "distinct, non-duplicative" conduct.   *See Luxury Autos of Huntington, Inc. v. Volkswagen Grp. of Am., Inc.*, 49 Misc. 3d 1207(A), at *4 (Sup. Ct. Nassau Cty. 2015) (table decision); *Dialcom, LLC v. AT&T Corp.*, 20 Misc. 3d 1111(A), at *10 (Sup. Ct. Kings Cty. 2008) (table decision).   That is *not* the case here, where there is much more than "some overlap" -- indeed, there is virtually *complete* overlap -- of underlying conduct.   And, as further demonstrated in the Opening Brief, adorning that same conduct with imputations of bad faith does not change the result.   Br. at 19-20; *see also*, *e.g.*, *CSI Inv. Partners II, L.P. v. Cendant*

---

[8]   *Compare* Compl. ¶ 132 ("Sanofi breached the implied covenant . . . by delaying Lemtrada sales and keeping Lemtrada sales volume low."), *with id.* ¶ 5 (alleging that Sanofi breached Section 7.10 of the CVR Agreement by, among other things, "embark[ing] on a slow path to FDA approval and depart[ing] from its own drug commercialization patterns and those of others in the industry").

*Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007) (dismissing implied covenant claim as duplicative where contract claim was premised on defendants' failure to use "reasonable commercial efforts" and "general historical practices" to, among other things, cross-market products, and plaintiffs' separate implied covenant claim simply "re-alleg[ed] that Cendant's failure to use various marketing tactics was in bad faith").[9]

### B.   The Damages Plaintiff Seeks Underscore The Need For Dismissal Of The Implied Covenant Claim[10]

As explained in the Opening Brief, the case for dismissal is even stronger where, as here, the damages sought for breach of the implied covenant are "intrinsically tied" to those sought for breach of contract. *See* Br. at 21.  In an attempt to demonstrate that the damages associated with its implied covenant claim are distinct from those associated with its express contract claims, Plaintiff contends that it seeks relief for Sanofi's alleged breach of the implied covenant that is different from the relief it seeks for Sanofi's alleged breach of contract, including an injunction prohibiting Sanofi from exercising the Failure Purchase Option at some point in the future.  *See* Opp. at 23.  However, Plaintiff's myopic focus on the *form of relief* glosses over the "resulting injury alleged" by Plaintiff -- and it is the "resulting injury alleged" that matters.  *See* Br. at 21; *see also Deer Park Enters., LLC v Ail Sys., Inc.*, 57 A.D.3d 711, 712 (2d Dep't 2008) (holding that implied covenant claim was duplicative of express contract claim because the "resulting injury alleged" was "identical"), *quoted in Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*,

---

[9] Plaintiff requests as a fallback that the Court allow the implied covenant claim to proceed because "the record on the express [contract] claim has not been fully developed."  Opp. at 22.  By Plaintiff's logic, no implied covenant claim would *ever* be dismissed so long as it is brought in tandem with an express contract claim.  That is not the law (Br. at 17-20), nor is Plaintiff's request consistent with the obligations imposed by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 1 (Rule 12 should be dispatched to "secure the just, speedy, and inexpensive determination of every action and proceeding").

[10] There need not be overlapping conduct *and* overlapping damages to dismiss the implied covenant claim as redundant; one or the other is enough.  *See Concesionaria*, 307 F. Supp. 2d at 564.

810 F.3d 861 (2d Cir. 2015); *see also Rojas v. Don King Prods., Inc.*, 2012 WL 760336, at *4 (S.D.N.Y. Mar. 6, 2012) (damages for implied covenant claim "intrinsically tied" to express contract claim because both based on the same harm).  As Sanofi explained in its Opening Brief, the "resulting injury alleged" here is exactly the same.  *See* Br. at 21.[11]

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in Sanofi's Opening Brief, Sanofi respectfully requests that the Court dismiss Counts II and III of the Complaint in their entirety.

Dated:  New York, New York
         April 1, 2016

Respectfully submitted,

 */s/ John A. Neuwirth*
John A. Neuwirth
Joshua S. Amsel
Stefania D. Venezia
Justin D. D'Aloia
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007

*Attorneys for Sanofi*

---

[11] Plaintiff attempts to draw a distinction between its failure to receive the Product Sales Milestone payments and the loss of any right to receive such payments.  Opp. at 23 n.23.  This is a distinction without a difference; at bottom, Plaintiff is complaining about the alleged loss of the payment amounts applicable to each of PSM1-4.

WEIL:\95670467\1\71937.0101