# MILBANK, TWEED, HADLEY & McCLOY LLP

**28 LIBERTY STREET**

**NEW YORK, N.Y. 10005-1413**

212-530-5000

FAX: 212-530-5219

Stacey J. Rappaport
Partner
DIRECT DIAL NUMBER
212-530-5347
E-MAIL: SRappaport@milbank.com

July 8, 2016

| | |
|---|---|
| **LOS ANGELES** 213-892-4000 FAX: 213-629-5063 | **BEIJING** 8610-5969-2700 FAX: 8610-5969-2707 |
| **WASHINGTON, D.C.** 202-835-7500 FAX: 202-835-7586 | **HONG KONG** 852-2971-4888 FAX: 852-2840-0792 |
| **LONDON** 44-20-7615-3000 FAX: 44-20-7615-3100 | **SEOUL** 822-6137-2600 FAX: 822-6137-2626 |
| **FRANKFURT** 49-69-71914-3400 FAX: 49-69-71914-3500 | **SINGAPORE** 65-6428-2400 FAX: 65-6428-2500 |
| **MUNICH** 49-89-25559-3600 FAX: 49-89-25559-3700 | **TOKYO** 813-5410-2801 FAX: 813-5410-2891 |
| | **SÃO PAULO** 55-11-3927-7700 FAX: 55-11-3927-7777 |

**VIA ECF AND HAND DELIVERY**

Hon. George B. Daniels
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

   Re: <u>American Stock Transfer & Trust Company, LLC v. Sanofi, 15-cv-8725 (GBD)</u>

Dear Judge Daniels:

   We are counsel of record to the plaintiff in this Action and represent UMB Bank, N.A., as successor trustee of an express trust for the benefit of holders (the "<u>Holders</u>") of contingent value rights ("<u>CVRs</u>") under a contingent value rights agreement between plaintiff predecessor trustee American Stock Transfer & Trust Company, LLC ("<u>AST</u>") and Sanofi (the "<u>CVR Agreement</u>").[1]  Pursuant to the Court's order at the status conference on June 29, 2016, we write in further opposition to Defendant's Motion to Dismiss (ECF No. 26) to apprise the Court of intervening events that moot Sanofi's "ripeness" argument which formed the basis of its motion to dismiss Count II of the Complaint.  We respectfully submit that the Court should deny Sanofi's Motion to Dismiss Count II.

---

[1]  Pursuant to an Instrument of Appointment and Acceptance between UMB Bank, N.A. and Sanofi, effective as of June 30, 2016, UMB Bank, N.A. replaced AST as the trustee and succeeded to all of the "rights, duties and obligations" of the trustee under the CVR Agreement.  Earlier today, UMB, as Trustee, filed an unopposed motion to substitute UMB as plaintiff in this action (ECF No. 56).

Hon. George B. Daniels
July 8, 2016
Page 2

   Count II of the Complaint alleges that Sanofi failed to use contractually-required Diligent Efforts, as defined in the CVR Agreement, to achieve Product Sales Milestones for the drug "Lemtrada."  Had such milestones been met, the Holders (via the Trustee), would have received certain milestone payments.[2]  (Compl. ¶¶ 127-30.)  With respect to Product Sales Milestone #1 ("PSM1"), the Complaint alleges that had Sanofi used Diligent Efforts, Sanofi would have met the PSM1 threshold of $400 million in qualifying sales in the second or third quarter of 2015, entitling the Holders (via the Trustee) to a payment of $2 per CVR shortly thereafter. (Compl. ¶ 102.)

   In response to these allegations, Sanofi moved to dismiss Count II pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that the claim was not ripe. (*See* Def.'s Mem. Law Supp. Mot. to Dismiss ("Def.'s Mem."), ECF No. 20 at 15-17; Reply Mem. Law Further Supp. Mot. Dismiss ("Reply Mem."), ECF No. 31, at 2-6.)  Specifically, Sanofi argued that Count II was premature because, as of the briefing on its motion to dismiss, which concluded on April 1, 2016, Sanofi still had the opportunity to achieve the Product Sales Milestones. (*Id.* at 16.)

   With respect to PSM1, Sanofi took the position that Plaintiff had not pleaded present injury because Sanofi had until the end of the PSM1 measuring period (*i.e.*, until June 30, 2016) to achieve the $400 million Lemtrada sales threshold:

- "There is still time to achieve the milestone and, until then, Plaintiff has no present damages." (Reply Mem. at 4.)

- Count II should be dismissed, "only to be litigated if and when the deadlines for the Product Sales Milestones come and go and the milestones are not achieved." (Def.'s Mem. at 16.)

   On July 5, 2016, Sanofi disclosed in an SEC filing that PSM1 was not met by the June 30, 2016 measuring period end date. (*See* Form 6-K at Ex. 99.1 (attached hereto as Exhibit A).)[3]  Although Plaintiff vigorously disagrees with Sanofi's arguments that Count II was not ripe when the claim was filed,[4] even under Sanofi's flawed ripeness argument, there no longer is "still time to achieve the milestone," (Reply Mem. at 4), and Count II is now indisputably ripe.

---

[2]  Capitalized terms not otherwise defined have the meanings as defined in the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Counts II and III of the Complaint ("Opp. Mem.") (ECF No. 26).

[3]  The Court may take judicial notice of the Form 6-K. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC . . . .").

[4]  (*See, e.g.,* Opp. Mem. at 16-17 (a product sales milestone is met at the "first instance" that the measured sales reach the predefined target, and the "first instance" that PSM1 should have been met was the second or third quarter of 2015; *id.* at 18 (even if PSM1 was met on June 30, 2016, the Trustee, on behalf of the Holders, would be entitled to collect damages in the form of interest for failing to meet PSM1 in the second or third quarter of 2015).)

Hon. George B. Daniels
July 8, 2016
Page 3

Under Second Circuit precedent, this Court should consider relevant post-complaint intervening events when evaluating the ripeness of a claim. *See Am. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 n.4 (2d Cir. 1989) (reversing dismissal of complaint; "[I]t is irrelevant whether the case was ripe for review when the complaint was filed. Intervening events relevant to the ripeness inquiry should be considered and may be determinative.").[5]  Sanofi's disclosed failure to meet PSM1 moots Sanofi's ripeness argument, which should be rejected by the Court.[6]

For these reasons, and the reasons set forth in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Counts II and III of the Complaint, Plaintiff respectfully requests that the Court deny Sanofi's Motion to Dismiss Count II of the Complaint.

Respectfully submitted,

*/s/* Stacey J. Rappaport
Stacey J. Rappaport

cc:   All Counsel (via ECF)

---

[5]   *Accord Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1238 n.2 (10th Cir. 2004) (upholding claim and considering post-filing events in evaluating ripeness); *Henley v. Herring*, 779 F.2d 1553, 1555 (11th Cir. 1986) (claim ripened by the time the district court ruled); *Manley v. Texas*, No. 01-cv-231, 2001 U.S. Dist. LEXIS 25427, at *5 (E.D. Tex. July 20, 2001) (denying motion to dismiss complaint and stating, "Whether a case is ripe depends on the state of affairs at the time the court is called upon to render a decision.") (citations omitted); *Newark Branch, N.A.A.C.P. v. City of Clifton*, No. 89-cv- 3238, 1990 WL 238665, at *4 (D.N.J. Dec. 27, 1990) (denying motion to dismiss complaint and stating, "In determining ripeness, a court may consider events that occurred after the filing of the complaint.") (citation omitted).

[6]   To the extent Sanofi asserts that plaintiff has alleged no injury arising from Sanofi's failure to meet Product Sales Milestones #2-4 ("PSM2," "PSM3," and "PSM4"), that argument ignores that Sanofi's failure to meet PSM1 also delayed achievement of and reduced the available measuring periods for the remaining Product Sales Milestones, causing further injury to the Holders. (Opp. Mem. at 4 n.5.)  For example, had Sanofi met PSM1, PSM1 sales would have been counted towards the sales required to achieve PSM2, accelerating achievement of PSM2 and entitling the Holders to another $3 per CVR. The achievement of PSM2 is a prerequisite to achievement of later milestones PSM3 and PSM4. (Compl. (ECF No. 5) Ex A (CVR Agreement) § 1.1 (definitions of Product Sales Milestone #3 and Product Sales Milestone #4).) Because of this, the delay in achievement in the earlier milestones reduces the amount of time available pre-contract termination to achieve the later milestones.