**Weil, Gotshal & Manges LLP**

BY ECF AND HAND DELIVERY

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**John A. Neuwirth**
+1 212 310 8297
john.neuwirth@weil.com

July 18, 2016

Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *American Stock Transfer & Trust Co., LLC v. Sanofi*, No. 15 Civ. 8725 (GBD)

Dear Judge Daniels:

We represent Sanofi in the above-referenced action and write (i) in response to Ms. Rappaport's July 8, 2016 letter to the Court (ECF No. 59)[1] and (ii) in further support of Sanofi's motion to dismiss Counts II and III of the Complaint (ECF Nos. 19-21, 31).[2] Plaintiff's July 8 letter does not address Sanofi's motion with respect to Count III and, thus, that portion of Sanofi's motion should be granted for all of the reasons set forth in Sanofi's moving papers. For the reasons set forth below, Sanofi respectfully requests that the Court also grant Sanofi's motion with respect to Count II.

It is black letter law that, in order to sustain a claim for breach of contract, damages must adequately be alleged. *See, e.g.*, *House of Eur. Funding I Ltd. v. Wells Fargo Bank, N.A.*, 2015 WL 1514520, at *6 (S.D.N.Y. Mar. 31, 2015) (dismissing breach of contract claim by indenture trustee for failing to "adequately allege[] that it suffered any damages from [the issuer]'s alleged breaches"); *see also* ECF No. 20 at 14-15. Notwithstanding Sanofi's July 5, 2016 disclosure that, as of June 30, 2016, "Product Sales Milestone #1 has not been met," (*see* ECF No. 59 at Ex. A), Plaintiff has failed to adequately allege *any* damages as a result of Sanofi's inability to achieve PSM1. Specifically, in order for its breach of contract claim with respect to PSM1 to survive dismissal, Plaintiff was required to plead *facts* alleging *both* that Sanofi failed to use Diligent Efforts *and* that such alleged failure injured Plaintiff --

---

[1] In her July 8 letter, Ms. Rappaport states that her firm represents both (i) American Stock Transfer & Trust Company, LLC ("AST"), the current plaintiff in this action and the former trustee under the CVR Agreement out of which the claims in this action arise, and (ii) UMB Bank, N.A. ("UMB"), the successor trustee under the CVR Agreement, which has moved to be substituted for AST as plaintiff (ECF Nos. 56-58). UMB's substitution motion, which Sanofi does not oppose, is currently pending. Pending the Court's disposition of that motion, references herein to "Plaintiff" refer to AST.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Sanofi's Motion to Dismiss Counts II and III of the Complaint. *See* ECF Nos. 19-21, 31.

Honorable George B. Daniels
July 18, 2016
Page 2

*i.e.*, that Sanofi would have achieved PSM1 had it used efforts that Plaintiff contends were required under the CVR Agreement.  Of course, the CVR Agreement is clear that achievement of the milestones (including, but not limited to, PSM1) is *not* guaranteed.  See ECF No. 5 (Compl. Ex. A at 15).  In any event, there are *no* facts pled in the Complaint supporting the contention that PSM1 *would have been achieved in 2015* had Diligent Efforts been employed.  Indeed, Plaintiff does no more than nakedly assert -- without reference to any market data, sales data or any other analytical support -- that had Sanofi and Genzyme used the Diligent Efforts required by the CVR Agreement, PSM1 "would have been met as early as the second quarter of 2015, and no later than the third quarter of 2015." ECF No. 5 (Compl. ¶ 102); *see also id*. ¶ 89 (similar).  This conclusory assertion should not be credited on a motion to dismiss, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and Sanofi's pending motion as it relates to PSM1 should therefore be granted.  *See House of Eur. Funding*, 2015 WL 1514520 at *6 (dismissing breach of contract claim and finding that damages due to alleged breaches of contract were not adequately pled where Wells Fargo "assert[ed] that various hypothetical agreements between HOE I and EAA 'would have a material impact on Noteholders and Wells Fargo'" without "plead[ing] any facts to suggest that Wells Fargo suffered damages") (citations omitted).

Sanofi's motion to dismiss Count II of the Complaint also should be granted with respect to PSM2-4.  As previously explained by Sanofi (*see* ECF No. 20 at 5, 15-17), unlike PSM1, there is *no* time restriction with respect to the achievement of PSM2-4 other than the CVR Agreement's "Termination Date" of December 31, 2020, which is more than *four years away*.  Thus, any payments associated with PSM2-4 are not now due and owing and will not be for years, if ever.  Tellingly, Plaintiff does not (because it cannot) dispute these facts.  Rather, the only mention of PSM2-4 in Plaintiff's July 8 letter is in a footnote in which it is suggested, incorrectly, that Plaintiff has been injured because Sanofi's alleged "failure to meet PSM1 also delayed achievement of and reduced the available measuring periods for [PSM2-4]." (ECF No. 59 at 3 n.6).  But Plaintiff does not allege (again, because it cannot) that Sanofi already should have achieved *any* of PSM2-4.[3]  Moreover, even if Plaintiff were correct (and it is not) that the inability to achieve PSM1 "reduced" the available measuring periods for PSM2-4,[4] because Sanofi still has more than four years to achieve PSM2-4, Plaintiff simply has no injury today.

---

[3] In addition, Plaintiff has acknowledged that sales used to achieve previous milestones *cannot*, by definition, be used to achieve either PSM3 or PSM4.  *See* ECF No. 5 (Compl. ¶¶ 23(d), 23(e)) (alleging that global sales to be counted for purposes of PSM3 and PSM4 are "exclusive of any quarters used for achievement of previous milestones"); *see also id.* (Compl. Ex. A. at 11-12).

[4] PSM1 is measured by sales in certain qualifying markets and aggregate sales outside of those markets during just the "four (4)-calendar quarter period that begins on the first anniversary of Product Launch." (ECF No. 5 (Compl. Ex. A at 11)).  Each of PSM2-4, by contrast, are measured by *any* sales in *any* Product Sales Measuring Period, defined in the CVR Agreement to mean "a period equal to the prior four (4) calendar quarters, calculated as of March 31, June 30, September 30 and December 31 of each calendar year during the term of this CVR Agreement" (ECF No. 5 (Compl. Ex. A at 11)).  In other words, the measuring periods for PSM2-4 are distinct from those used to measure PSM1 and, unlike PSM1, are not tethered to the first anniversary of Product Launch (a defined term in the CVR Agreement).

Honorable George B. Daniels
July 18, 2016
Page 3

For these reasons, and those set forth in the papers supporting Sanofi's motion to dismiss Counts II and III of the Complaint, Sanofi respectfully requests that the Court grant Sanofi's motion.

Respectfully submitted,

*/s/ John A. Neuwirth*
John A. Neuwirth

cc:     All Counsel