# EXHIBIT D

CAHILL GORDON & REINDEL LLP
EIGHTY PINE STREET
NEW YORK, NY 10005-1702

| | | | | |
|---|---|---|---|---|
| FLOYD ABRAMS | BART FRIEDMAN | TELEPHONE: (212) 701-3000 | ALIZA R. LEVINE | JONATHAN A. SCHAFFZIN |
| L. HOWARD ADAMS | PIERRE M. GENTIN | WWW.CAHILL.COM | JOEL H. LEVITIN | JOHN SCHUSTER |
| ROBERT A. ALESSI | CHARLES A. GILMAN | | GEOFFREY E. LIEBMANN | MICHAEL A. SHERMAN |
| HELENE R. BANKS | JASON M. HALL | | ANN S. MAKICH | DARREN SILVER |
| ANIRUDH BANSAL | WILLIAM M. HARTNETT | 1990 K STREET, N.W. | JONATHAN I. MARK | JOSIAH M. SLOTNICK |
| DAVID L. BARASH | CRAIG M. HOROWITZ | WASHINGTON, DC 20006-1181 | BRIAN T. MARKLEY | RICHARD A. STIEGLITZ JR. |
| LANDIS C. BEST | DOUGLAS S. HOROWITZ | (202) 862-8900 | WILLIAM J. MILLER | SUSANNA M. SUH |
| BRADLEY J. BONDI | TIMOTHY B. HOWELL | | NOAH B. NEWITZ | ANTHONY K. TAMA |
| SUSAN BUCKLEY | DAVID G. JANUSZEWSKI | | MICHAEL J. OHLER | JONATHAN D. THIER |
| KEVIN J. BURKE | ELAI KATZ | CAHILL GORDON & REINDEL (UK) LLP | DAVID R. OWEN | JOHN A. TRIPODORO |
| JAMES J. CLARK | THOMAS J. KAVALER | 24 MONUMENT STREET | JOHN PAPACHRISTOS | GLENN J. WALDRIP, JR. |
| BENJAMIN J. COHEN | BRIAN S. KELLEHER | LONDON EC3R 8AJ | LUIS R. PENALVER | HERBERT S. WASHER |
| SEAN M. DAVIS | DAVID N. KELLEY | +44 (0)20 7920 9800 | KIMBERLY PETILLO-DÉCOSSARD | MICHAEL B. WEISS |
| STUART G. DOWNING | RICHARD KELLY | | MICHAEL W. REDDY | S. PENNY WINDLE |
| ADAM M. DWORKIN | CHÉRIE R. KISER* | | OLEG REZZY | DAVID WISHENGRAD |
| ANASTASIA EFIMOVA | EDWARD P. KRUGMAN | WRITER'S DIRECT NUMBER | JAMES ROBINSON | COREY WRIGHT |
| JENNIFER B. EZRING | JOEL KURTZBERG | | THORN ROSENTHAL | JOSHUA M. ZELIG |
| JOAN MURTAGH FRANKEL | TED B. LACEY | (212) 701-3041 | TAMMY L. ROY | DANIEL J. ZUBKOFF |
| JONATHAN J. FRANKEL | MARC R. LASHBROOK | | | |

*ADMITTED IN DC ONLY

December 9, 2016

Re:   Request #1 Pursuant to Section 4.2(f) and 5.4(b) of the CVR Agreement

Dear Sir/Madam:

Reference is made to the Contingent Value Rights Agreement, dated March 30, 2011, by and between Sanofi-Aventis ("Sanofi") and UMB Bank, N.A. ("Trustee"), as successor to American Stock Transfer & Trust Company LLC (the "CVR Agreement").

This Firm has been retained, *inter alia*, to make an inquiry or investigation on behalf of the Trustee into the facts and matters set forth below, including, without limitation, in order to assess Sanofi's compliance with the CVR Agreement.[1] Section 4.2(f) provides that the Trustee is "entitled to examine the books, records and premises of the [Sanofi] . . . at the sole cost of the Company." Furthermore, Section 5.4(b) provides that Sanofi must "file with the Trustee such additional information, documents and reports with respect to compliance by the Company with the conditions and covenants of this CVR Agreement as may be required from time to time by the Trustee." Therefore, pursuant to Section 4.2(f) and 5.4(b) thereof, we request that Sanofi file and/or make available, as applicable, the books, records, premises, information, documents and reports specified below. Please also confirm that Sanofi agrees to reimburse the Trustee for any costs (including those of this Firm) and expenses incurred in connection with such examination as required by the CVR Agreement.

As you are aware, an element of the consideration to shareholders of Genzyme to tender their shares as part of the Merger was the undertaking by Sanofi to "use commercially reasonable efforts to achieve the Production Milestone on a timely basis." CVR Agreement § 7.10. On behalf of the Trustee, this Firm is undertaking an investigation of potential claims arising out of and relating to that obligation. Therefore we request:

---

[1]   Unless otherwise defined in this letter, capitalized terms shall be as set forth in the CVR Agreement.

CAHILL GORDON & REINDEL LLP

- 2 -

1. A report setting forth (a) each and every one of the activities undertaken by Sanofi to comply with its obligation to "use commercially reasonable efforts to achieve the Production Milestone"; (b) each and every reason that such activities failed to achieve the Production Milestone; and (c) indicating each time, prior to December 31, 2011, any of Sanofi's employees, officers, directors and/or agents, including, without limitation, consultants, experts, accountants, attorney, knew or should have known that the probability of the achievement of the Production Milestone was less than a seventy percent.

2. All documents evidencing Sanofi's efforts to achieve the Production Milestone. Specifically, please provide information relating to any resources allocated by Sanofi, as opposed to Genzyme, to achieve the Production Milestone. In particular, without limiting the forgoing, please provide all documents:

    - Evidencing Sanofi's use of its "world-class manufacturing infrastructure and global quality organization" and/or "additional sophisticated manufacturing expertise" to "accelerate solutions to the manufacturing issues" faced by Genzyme. See Transcript of August 30, 2010 Conference Call;

    - Concerning efforts by Sanofi to use its "engineering skills" from its own business to "help Genzyme" including, its expertise in "producing bulk product," "sterile fill and finish," rationalization of production at Hospira, improving "yield issues on cell banks", transferring knowledge gained from the production of Lovenox, monoclonal antibodies, and vaccines. See Transcript of September 15, 2010 Conference Call;

    - Concerning efforts by Sanofi to "provide extra people" and background to resolve any production issues at Genzyme. See Transcript of October 4, 2010 Conference Call; and

    - Concerning any "additional resources" provided by Sanofi-Pasteur to Genzyme. See Transcript of April 28, 2011 Conference Call.

3. Documents sufficient to identify the first date upon which Sanofi or Genzyme, or any of their employees, officers, directors and/or agents, including, without limitation, consultants, experts, accountants, attorneys, had knowledge of a reasonable likelihood that the Production Milestone would not be timely met.

4. All documents, dated prior to December 31, 2011, relating to any predictions, including, without limitation, yield predictions, that indicated that Sanofi would not timely meet the Production Milestone.

5. All documents relating to any assessment by Sanofi or Genzyme, or any of their employees, officers, directors and/or agents, including, without limitation, consultants, experts, accountants, attorneys of (a) the probability of and/or timelines for achieving the Production Milestone and/or (b) the reasons for the failure to timely meet the Production Milestone. Without limiting the foregoing, please provide:

Cahill Gordon & Reindel llp

- 3 -

- All diligence reports prepared as part of the Merger that reference the production of Fabrazyme and Cerezyme;
- Any analysis of the impact of the consent decree entered into by Genzyme with respect to the production of Fabrazyme and Cerezyme;
- All analysis of the efforts and timing to produce additional capacity for the production of Fabrazyme and Cerezyme, including any analysis of the potential financial impact arising out of the proposed capital expenditures for such capacity; and
- Any documents relating to a potential third party supply of Fabrazyme and Cerezyme.

6. All documents relating to the statement of Genzyme spokesperson Lori Gorski made on March 24, 2011, that "production is continuing to go well" and that Sanofi is "not actively involved in our operations at this time."[2]

7. All documents relating to efforts to improve the bioreactor capacity at Allston Landing prior to December 31, 2011.

8. All material communications with the FDA which pertain or relate to the production of Fabrazyme and Cerezyme.

9. All documents relating to the allocation and timing of production of Fabrazyme and Cerezyme at or between the Allston Landing and Framingham facilities generated prior to December 31, 2011.

10. All documents relating to the turn-over or reallocation of employees and/or consultants responsible for the production of Fabrazyme and Cerezyme, including, without limitation, the decision to place William Aitchison in an oversight position and the departure of Scott Canute.

11. All documents prepared by Sanofi or Genzyme, or any of their employees, officers, directors and/or agents, including, without limitation, consultants, experts, accountants, attorneys which analyze the financial impact of not achieving the Production Milestone.

Please do not hesitate to reach out to me at the above number to discuss the timing of the response to the requests, including when on-site inspections can occur.

---

[2] See Genzyme drug sees new supply disruption, Boston Globe (March 24, 2011), at http://archive.boston.com/business/healthcare/articles/2011/03/24/genzyme_drug_sees_new_supply_disruption/

CAHILL GORDON & REINDEL LLP

- 4 -

Sincerely,

*Michael Brenner Weiss* /DV

Michael Brenner Weiss

VIA FEDEX AND EMAIL

Sanofi
c/o John Neuwirth, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

cc: Gavin Wilkinson
 Charles A. Gilman, Esq.