UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UMB BANK, N.A., as Trustee, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 15 Civ. 8725 (GBD) (RWL) |
| v. | : | |
| | : | ECF CASE |
| SANOFI, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT VI</u>

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Sanofi*

Dated: November 17, 2017

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

      A.     The CVR Agreement .......................................................................... 3

      B.     Product Launch ................................................................................... 4

      C.     Sanofi Seeks Discovery From Certain CVR Holders ........................... 6

ARGUMENT ................................................................................................................... 7

I.     A GENUINE ISSUE OF MATERIAL FACT PRECLUDES THE ENTRY OF
SUMMARY JUDGMENT ........................................................................................ 7

II.    RULE 56(d) PRELUDES THE ENTRY OF SUMMARY JUDGMENT ....................... 11

      A.     Fact Discovery Is Likely To Create A Genuine Issue Of Material Fact ............... 12

      B.     Plaintiff Has Stymied Sanofi's Attempts To Obtain Relevant Discovery ........... 13

CONCLUSION ............................................................................................................... 16

WEIL:\96353235\1\71937.0101

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                            **Page(s)**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
   2014 WL 113728 (S.D.N.Y. Jan. 13, 2014) ................................................... 8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).......................................................................................7

*Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*,
   432 F.3d 428 (2d Cir. 2005).........................................................................7

*Aurora Loan Serv., LLC v. Thomas*,
   53 A.D.3d 561 (2d Dep't 2008) ................................................................... 13

*Bombardier Capital Inc. v. Reserve Capital Corp.*,
   295 A.D.2d 793 (3d Dep't 2002) ................................................................. 13

*CMEG NYMEX Holding Inc. v. Optionable, Inc.*,
   2012 WL 3683560 (S.D.N.Y. Aug. 24, 2012) ........................................... 11

*Dalton v. Educ. Testing Serv.*,
   87 N.Y.2d 384 (1995) .................................................................................. 12

*Discovision Assocs. v. Toshiba Corp.*,
   2008 WL 4500693 (S.D.N.Y. Oct. 7, 2008) ............................................... 8

*Elliott Assocs., L.P. v. Republic of Peru*,
   961 F. Supp. 83 (S.D.N.Y. 1997)........................................................... 11, 15

*Flood v. Carlson Rests. Inc.*,
   2016 WL 3221146 (S.D.N.Y. June 7, 2016) .............................................. 11

*In Touch Concepts, Inc. v. Cellco P'ship*,
   949 F. Supp. 2d 447 (S.D.N.Y. 2013), *aff'd*, 788 F.3d 98 (2d Cir. 2015) .............................. 13

*King v. VeriFone Holdings, Inc.*,
   12 A.3d 1140 (Del. 2011) ........................................................................... 13

*Miller v. Wolpoff & Abramson, L.L.P.*,
   321 F.3d 292 (2d Cir. 2003)........................................................................ 11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*,
   75 N.Y.2d 175 (1990) ................................................................................... 8

*Netherby Ltd. v. Jones Apparel Grp., Inc.*,
   2007 WL 1041648 (S.D.N.Y. Apr. 5, 2007)................................................ 8

*Pershing Square v. Ceridian Corp.*,
    923 A.2d 810 (Del. Ch. 2007) ............................................................................... 13

*Revson v. Claire's Stores, Inc.*,
    120 F. Supp. 2d 322 (S.D.N.Y. 2000) ..................................................................... 8

*Richbell Information Servs., Inc. v. Jupiter Partners, L.P.*,
    309 A.D.2d 288 (1st Dep't 2003) ....................................................................... 3, 13

*UMB Bank, N.A. v. Sanofi*,
    2016 WL 4938000 (S.D.N.Y. Sept. 8, 2016) ....................................................... 1, 5

**Statutes & Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................... 7

Fed. R. Civ. P. 56(d) ........................................................................................... 3, 11, 12

Sanofi respectfully submits this memorandum of law in opposition to Plaintiff UMB Bank, N.A.'s ("Plaintiff") motion for summary judgment as to Count VI of the Second Amended Complaint (the "Motion") (ECF No. 134).[1]

## PRELIMINARY STATEMENT

Plaintiff's claims arise out of a Contingent Value Rights Agreement between Sanofi and American Stock Transfer & Trust Company, LLC ("AST") that was entered into in connection with Sanofi's 2011 acquisition of Genzyme Corporation (the "CVR Agreement").[2]  That agreement entitles the holders of contingent value rights ("CVRs") issued in connection with the acquisition to potential payments conditioned on the achievement of, among other things, certain sales-related milestones with respect to Lemtrada, a multiple sclerosis drug.  The first of four such milestones, Product Sales Milestone #1 ("PSM1"), was not achieved and, thus, Sanofi did not (and did not have to) make the associated payment.  Under the terms of the CVR Agreement, Sanofi has until December 31, 2020 to achieve the three remaining sales-related milestones, Product Sales Milestones #2-4 ("PSM2-4"), none of which, accordingly, are at issue in this litigation.[3]

Through the Motion, Plaintiff asks the Court to enter summary judgment in its favor on Count VI of the Second Amended Complaint (the "SAC"), which seeks a declaratory judgment that Section 7.6 of the CVR Agreement obligates Sanofi to permit an audit of its global Lemtrada

---

[1] "Memorandum" or "Mem." refers to Plaintiff's Memorandum of Law in Support of the Motion (ECF No. 135); "Andrus Decl." refers to the Declaration of Brent L. Andrus, dated October 5, 2017, submitted in support of the Motion (ECF No. 136); and "Wilkinson Decl." refers to the Declaration of Gavin Wilkinson, dated October 5, 2017, submitted in support of the Motion (ECF No. 137). "Venezia Decl." refers to the accompanying Declaration of Stefania D. Venezia, dated November 17, 2017, submitted in opposition to the Motion.

[2] AST, the predecessor Trustee, originally commenced this action in November 2015.  It subsequently resigned as Trustee in May 2016, Plaintiff was appointed as successor Trustee in June 2016, and, on July 19, 2016, the Court granted Plaintiff's unopposed motion to substitute into this case as Plaintiff for then-Plaintiff AST. (ECF No. 66.)

[3] *UMB Bank, N.A. v. Sanofi*, 2016 WL 4938000, at *6 n.6 (S.D.N.Y. Sept. 8, 2016) ("To the extent that Plaintiff argues that the Complaint sufficiently alleges a breach of contract based on PSM #2-4 . . . this Court disagrees, as the deadline to meet those milestones is not until December 31, 2020.").

sales.  Specifically, Plaintiff seeks an order requiring Sanofi to:  (i) "cooperate" in the selection of an auditor; (ii) provide the auditor with access to information; (iii) pay for the audit; and (iv) make the PSM1 payment, plus interest, "if the [auditor] concludes that . . . [the] payment should have been paid but was not paid when due," *i.e.*, that there is a "CVR Shortfall."  Mem. at 10.  For the following reasons, the Motion should be denied.

First, a genuine issue of material fact precludes the entry of summary judgment.  Section 7.6 of the CVR Agreement, assuming it is exercised by the Acting Holders (as defined in the CVR Agreement) and the Trustee in good faith (*see* pp. 3, 12-13, *infra*), provides for an audit of Sanofi's Lemtrada sales reporting and for the auditor to determine whether a CVR Shortfall exists, which determination "shall be final, conclusive and binding."  But if there is a dispute over the measuring period for a given milestone (*i.e.*, the time period during which Lemtrada sales count towards the milestone), the auditor cannot (and is not empowered to) make the CVR Shortfall determination and, thus, effectuate the terms of Section 7.6.

That is precisely the case here.  Plaintiff contends in this litigation that Sanofi used the wrong measuring period for PSM1:  whereas Sanofi used a June 30, 2016 cutoff, Plaintiff posits that the measuring period may have extended as far out as December 2016.  *See* pp. 5-6, *infra*.[4] That dispute, prior to its resolution by the trier of fact, precludes the relief that Plaintiff seeks here as to Count VI.  Indeed, Plaintiff is clear in the Motion that the auditor's task is just to check the "numbers" (Mem. at 8); it cannot determine the measuring period for purposes of determining a CVR Shortfall.  Yet, Plaintiff asks the Court to enter an order compelling the auditor to do just that – *i.e.*, compelling Sanofi to make the PSM1 payment if the auditor determines there to have been

---

[4] As discussed further below, the measuring period for PSM1 necessarily depends on the determination of Product Launch.  Sanofi contends that Product Launch occurred on April 1, 2014, whereas Plaintiff posits (incorrectly) that Product Launch occurred sometime after April 14, 2014, possibly as late as January 1, 2015.  *See* pp. 5-6, 9-10, *infra*.

WEIL:\96353235\1\71937.0101

a CVR Shortfall.  Such an order simply cannot be entered on the current record.  In short, with Plaintiff having chosen to litigate the measuring period, summary judgment must be denied.  *See* Point I, *infra*.

Second, summary judgment must also be denied under Rule 56(d) of the Federal Rules of Civil Procedure.  Sanofi's efforts to obtain relevant discovery regarding, among other things, its affirmative defenses (including, but not limited to, its affirmative defense of bad faith), have been stymied by Plaintiff.  For months, Sanofi has sought relevant document discovery from certain CVR holders (including Acting Holders who, according to Plaintiff, directed the request for an audit under Section 7.6).  At every turn, Plaintiff has inappropriately blocked Sanofi's attempts to obtain such discovery.  Critically for purposes of this Motion, if Plaintiff or the Acting Holders are found to have acted in bad faith, any liability for not submitting to Plaintiff's purported "absolute and unequivocal" audit right (*see* Mem. at 8) would be extinguished, as "an explicitly discretionary contract right may not be exercised in bad faith." *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 302 (1st Dep't 2003).  Until Sanofi is given a full and fair opportunity to obtain the discovery it has requested, summary judgment is inappropriate.  *See* Point II, *infra*.

## STATEMENT OF FACTS[5]

### A.    The CVR Agreement

The CVR Agreement sets forth the terms governing the relationship between Sanofi and Plaintiff with respect to the CVRs.  Sanofi SOF ¶ 2.  The CVR Agreement is governed by New York law.  CVR Agreement § 1.10; *see also* Sanofi SOF ¶ 3.

Under the CVR Agreement, CVR holders are entitled to payments *if and when* certain

---

[5] Citations to Sanofi's counter-statement of material facts are referred to as "Sanofi SOF ¶."

milestones -- relevant here, PSM1 -- are achieved.  CVR Agreement at 2-3, 7-8, 11-12; *see also* Sanofi SOF ¶ 4.  As made clear in the CVR Agreement, achievement of the milestones is not guaranteed.  CVR Agreement at 15 (defining the "Termination Date" of the CVR Agreement as "the earlier of (a) December 31, 2020 and (b) the Payment Date for Product Sales Milestone #4"); *see also* Sanofi SOF ¶ 5.

Section 7.6(a) of the CVR Agreement provides that, "[u]pon the written request of the Acting Holders (but no more than once during any calendar year) . . . the Company shall provide an independent certified public accounting firm of nationally recognized standing jointly agreed upon by the Acting Holders and the Company . . . with access during normal business hours to such of the records of the Company as may be reasonably necessary to verify the accuracy of the statements set forth in the Product Sales Statements and the figures underlying the calculations set forth therein for any period within the preceding three (3) years that has not previously been audited in accordance with this Section 7.6."  CVR Agreement § 7.6(a); *see also* Sanofi SOF ¶ 10. Section 7.6(b) provides that "[i]f the Independent Accountant concludes that . . . any Product Sales Milestone Payment should have been paid but was not paid when due, the Company shall pay each Holder of a CVR the amount of such . . . Product Sales Milestone Payment . . . plus interest . . . (such amount including interest being the 'CVR Shortfall')."  CVR Agreement § 7.6(b); *see also* Sanofi SOF ¶ 11.

### B.    <u>Product Launch</u>

On January 16, 2014, Sanofi notified the CVR holders that "[t]he first paid commercial disposition of Lemtrada® as a product approved for the treatment of multiple sclerosis occurred in Germany in the course of October 2013" and qualified as the First Commercial Sale under the CVR Agreement.  *See* Sanofi SOF ¶ 13; Venezia Decl. Ex. 1.  The notice also provided that, as a

4

result, "Product Launch is deemed to occur on April 1, 2014." *See* Sanofi SOF ¶ 14; Venezia Decl. Ex. 1.

Based on a Product Launch date of April 1, 2014, both parties to this litigation initially agreed that the last date to achieve PSM1 was June 30, 2016. *See* Sanofi SOF ¶ 16; *see also* Plaintiff's Opposition to Sanofi's Partial Motion to Dismiss (ECF No. 26) at 10 n.9 ("Thus, June 30, 2016, and not December 31, 2016, is the last date on which sales could be counted towards the $400 million PSM1 threshold); Aug. 17, 2016 Hearing Transcript (ECF No. 77) at 6:16-18 (Mr. Neuwirth: "The parties agree that the deadline to meet that milestone was June 30, 2016."); *UMB Bank*, 2016 WL 4938000, at *2 n.4 ("The June 30, 2016 date became the operative deadline for PSM # 1 because the contractual measuring period was four quarters from the date of the first commercial sale in the last qualifying major market.").

On March 16, 2017, Plaintiff informed Sanofi for the first time that it "believes that Product Launch may not have occurred in Germany on April 1, 2015 [sic] as originally assumed by the parties." Sanofi SOF ¶ 17; Venezia Decl. Ex. 15 at 2. According to Plaintiff, "Product Launch" may have occurred sometime after April 1, 2014 and as late as January 1, 2015. *Id.* Since that time, Plaintiff has consistently disputed that Product Launch occurred on April 1, 2014. Sanofi SOF ¶ 18; *see also, e.g.*, SAC (ECF No. 125) ¶ 28 ("Sanofi *claims*" that June 30, 2016 is the deadline for PSM1) (emphasis added); Plaintiff's Memorandum of Law in Support of Motion to Compel the Production of Documents (ECF No. 129) ("Pl.'s Mot. to Compel") at 2-3 ("[T]he parties now dispute the date of Product Launch for Lemtrada, which, in turn, defines the applicable measuring period for PSM #1."); Pl.'s Mot. to Compel at 11 ("The parties dispute the date of Product Launch for Lemtrada. This is an important issue in this case because that date determines the correct measuring period for PSM #1."); Plaintiff's Reply Memorandum of Law in Support of

5

Motion to Compel the Production of Documents (ECF No. 141) at 7 ("the parties dispute the correct measuring period for PSM #1").  Instead, Plaintiff claims that the PSM1 measuring period may extend as far out as December 31, 2016.  Sanofi SOF ¶ 19; Pl.'s Mot. to Compel at 3 ("Other documents also suggest that the PSM # 1 measuring period would extend to December 31, 2016.").

### C.    Sanofi Seeks Discovery From Certain CVR Holders

In March 2016, Sanofi served interrogatories on then-Plaintiff AST requesting that it identify, among other things, any CVR holders that directed it to pursue claims against Sanofi under the CVR Agreement or recommended that it do so.  Sanofi SOF ¶ 20; Venezia Decl. Ex. 2 at 5-6.  After initially refusing to respond, then-Plaintiff AST identified ██████████

██████████████████████████████████████████████████

██████████████.  Sanofi SOF ¶¶ 21-22; Venezia Decl. Ex. 4 at 4-5.  Plaintiff UMB subsequently identified, in response to a set of interrogatories directed to it, ██████████

██████████████████████████████████████████████████

████.  Sanofi SOF ¶¶ 24, 28; Venezia Decl. Ex. 16 at 6-8.

In December 2016, Sanofi became aware of the existence of a Funding Agreement under which certain CVR holders committed to fund $14 million for the prosecution of this litigation in exchange for, among other things, the right to recover a possible Success Fee (as defined in the Funding Agreement) ███████████████████████████.  Sanofi SOF ¶ 27; Venezia Decl. Ex. 10.  A copy of the Funding Agreement, which identifies each CVR holder that contributed to the $14 million litigation fund, was produced by Plaintiff on February 10, 2017.  Sanofi SOF ¶ 27; Venezia Decl. Ex. 14.

On June 6, 2017, Sanofi subpoenaed 26 CVR holders (the "Subpoena Recipients") that were specifically identified as ████████████████████████████

████████████.  Sanofi SOF ¶ 29; Venezia Decl. Exs. 16 at 6-8, 17.  Each subpoena requested

6

documents concerning, among other things, this action, the CVR Agreement, any rights or remedies available under the CVR Agreement, and the investigation of any claims against Sanofi under the CVR Agreement.  Sanofi SOF ¶ 30; Venezia Decl. Ex. 17.

On June 19, 2017, Plaintiff filed a letter motion for permission to move to quash or limit the subpoenas, which motion was fully briefed by July 5, 2017.  (ECF Nos. 111, 113, 115, 117.) On August 10, 2017, Magistrate Judge Francis denied Plaintiff's motion, without prejudice, as premature and directed the parties and the Subpoena Recipients to meet and confer regarding the subpoenas.  (ECF No. 123 at 5-7.)  The parties' meet and confer efforts to date have been unsuccessful and, at a conference on November 16, 2017, Magistrate Judge Lehrburger directed the parties to continue their discussions and jointly report back to the Court on the status of their efforts by November 22, 2017.

## ARGUMENT

Summary judgment is appropriate only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).

## I.    A GENUINE ISSUE OF MATERIAL FACT PRECLUDES THE ENTRY OF SUMMARY JUDGMENT

According to Plaintiff, the "facts relevant to the resolution of this motion . . . cannot fairly be disputed" because Plaintiff "requested an independent audit" and Sanofi "refused."  Mem. at 7.

7

But the fact that Sanofi denied Plaintiff's request "does not necessarily establish the absence of a genuine issue of material fact." *Revson v. Claire's Stores, Inc.*, 120 F. Supp. 2d 322, 326 (S.D.N.Y. 2000) (denying summary judgment on contractual audit claim). To the contrary, as explained in more detail below, a disputed issue of fact surrounding the appropriate measuring period for PSM1 -- an issue Plaintiff itself injected into this litigation -- precludes the entry of summary judgment.

Specifically, Plaintiff seeks an audit of Sanofi's Product Sales Statements for its global Lemtrada sales, as well as of the figures underlying the calculations in those statements, because, in Plaintiff's own words, "if the independent audit shows a CVR Shortfall, the Holders will be paid." Mem. at 6.[6] However, in order for an auditor to make any CVR Shortfall determination, the appropriate product sales measuring period for PSM1 -- defined as "the first instance in which the sum of (x) the aggregate Major Market Product Sales for each Qualifying Major Market plus (y) the aggregate Product Sales achieved in all countries that are not Qualifying Major Markets during the four (4)-calendar quarter period that begins on the first anniversary of Product Launch

---

[6] Accordingly, Plaintiff does not simply request an audit; it asks for an order that any CVR Shortfall be paid. *See* Mem. at 10. Indeed, although Count VI of the SAC is styled as a claim for a declaratory judgment (*see* SAC ¶ 276), Plaintiff, through the Motion, asks the Court to order Sanofi to take a number of *affirmative* steps, including that it "cooperate in the selection of the [auditor]," "provide the [auditor] with access during normal business hours to such of the records of Sanofi as may be reasonably necessary" for the audit, "pay the fees charged by the [auditor]," and "pay each Holder the amount of [a] milestone payment, plus interest," in the event of a CVR Shortfall. Mem. at 10. However, ordering a party to *perform* its obligations under a contract, rather than simply declaring what those obligations are, is an equitable form of relief that sounds in specific performance. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*, 75 N.Y.2d 175, 181-82 (1990). And specific performance may be "inappropriate where the terms of the underlying contract are indefinite or leave room for reasonable minds to disagree over its performance." *Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 113728, at *4 (S.D.N.Y. Jan. 13, 2014). That is very much the case here, as Section 7.6 does not permit the auditor to determine whether a CVR Shortfall exists if the measuring period is in dispute. In addition, Section 7.6(a) contains open-ended terms like "reasonably necessary" and "figures underlying the calculations" that are not "certain enough to permit the court to frame an order of specific performance . . . and [] determine whether resulting performance is in accord with what has been ordered." *Netherby Ltd. v. Jones Apparel Grp., Inc.*, 2007 WL 1041648, at *20 (S.D.N.Y. Apr. 5, 2007); *see also Discovision Assocs. v. Toshiba Corp.*, 2008 WL 4500693, at *4 (S.D.N.Y. Oct. 7, 2008) (noting that "the term 'necessary,' in and of itself, affords minimal aid, leaving it unclear whether [the movant] is entitled to review the records that it requested").

equals or exceeds a total of four hundred million dollars ($400,000,000)," CVR Agreement § 1.1; Sanofi SOF ¶ 6 -- must first be established.

Critically, the measuring period for PSM1 necessarily depends on the determination of Product Launch (also a defined term in the CVR Agreement). This is because, in order to be counted as a Qualifying Major Market (and, thus, have aggregate Major Market Product Sales count towards PSM1), the First Commercial Sale (itself a defined term) must take place "on or before the end of the sixth (6th) calendar quarter *immediately following the calendar quarter in which the Product Launch occurs*." CVR Agreement § 1.1 (emphasis added); Sanofi SOF ¶¶ 7-9. And, with respect to all remaining countries, only those Product Sales achieved "during the four (4)-calendar quarter period *that begins on the first anniversary of Product Launch*" may be counted towards PSM1. CVR Agreement § 1.1 (emphasis added); Sanofi SOF ¶ 6.

In this case, Plaintiff disputes the date of Product Launch, which necessarily creates an ambiguity and genuine issue of material fact as to the appropriate measuring period for PSM1. Sanofi SOF ¶¶ 17-19; *see also supra* pp. 2-3, 5-6. The threshold dispute over the date of Product Launch is not one that can be resolved by an auditor retained to perform an audit under Section 7.6, nor does the CVR Agreement vest the auditor with such authority.[7] As even Plaintiff concedes, the auditor's sole function is to "provide[] an independent check on [the] numbers." Mem. at 8; *see also id.* at 5 (conceding that, even after any audit, "the CVR Agreement interpretation assumptions that went into th[e] calculations [in the Product Sales Statements] may

---

[7] At the heart of the dispute over the date of Product Launch is the parties' fundamental disagreement over the interpretation of the term First Commercial Sale as used in the CVR Agreement. *See* CVR Agreement § 1.1. More specifically, the parties dispute whether sales in Germany during the fourth quarter of 2013 were properly treated as a First Commercial Sale (thus triggering Product Launch). CVR Agreement § 1.1; Sanofi SOF ¶ 17; Venezia Decl. Ex. 15 at 2. Resolving this dispute will require an examination of the German healthcare system, including, among other things, whether Pricing and Reimbursement Approval (as used in the definition of First Commercial Sale) were required in Germany. Put simply, an auditor retained to "verify the accuracy" of figures is not equipped or empowered under the CVR Agreement to make such a determination.

9

still be at issue").  Consequently, until there is resolution (by the trier of fact) on the measuring period for PSM1, Section 7.6 cannot be effectuated:  while the auditor could verify the numbers in the Product Sales Statements (for some indiscriminate period), it plainly cannot determine whether a CVR Shortfall exists.[8]  Yet, that is exactly what Plaintiff wants to accomplish through the requested audit -- *i.e.*, have the auditor determine whether "a milestone payment should have been paid but was not paid when due."  Mem. at 10.  That cannot be done on the current record, and summary judgment is therefore inappropriate.[9]

Moreover, although Plaintiff suggests that "efficiencies" will be realized in this litigation if there is an audit at this juncture, in fact, efficiency demands the Motion's denial.  It makes no sense for Sanofi to endure the expense of and disruption caused by an audit that cannot result in any CVR Shortfall because of the parties' ongoing dispute (of Plaintiff's making) over the appropriate PSM1 measuring period, let alone that the requested audit covers a period -- from the quarter ended December 31, 2013 through the present (Mem. at 7) -- that vastly exceeds the measuring period for PSM1 under either side's theory.  Indeed, it would be a costly exercise in futility to allow an audit of all Lemtrada sales figures for an almost *four-year* period while the parties continue to vigorously litigate the appropriate measuring period for PSM1.[10]  Such a result

---

[8] Plaintiff may argue in reply that Section 7.6 can be bifurcated such that the auditor can verify the numbers, but not make the CVR Shortfall determination.  However, until there is resolution of the parties' dispute over the measuring period, it makes no sense to expend the time and money necessary to audit Lemtrada sales figures, let alone for time periods wholly unrelated to PSM1.  *See* pp. 2-3, 5-6, *supra*.

[9] Were Plaintiff to argue on reply that the CVR Agreement somehow permits an auditor to resolve the parties' dispute over the appropriate measuring period for PSM1, it would be wrong.  Nothing in the text of Section 7.6 grants an auditor that right.

[10] By way of example, irrespective of when Product Launch is determined to have occurred, the CVR Agreement makes clear that the only non-Qualifying Major Market Sales that count toward PSM1 are during the four quarters beginning on the first anniversary of Product Launch.  *See* CVRA § 1.1; Sanofi SOF ¶ 6.  As a result, non-Qualifying Major Market Sales (*i.e.*, sales in any country other than the U.S., U.K, Germany, Spain and Italy) outside that particular four-quarter period are irrelevant to PSM1.  Sanofi should not have to bear the cost of a global audit for all non-Qualifying Major Market Sales for an almost four-year period when, with respect to non-Qualifying Major Market

10

would also be inconsistent with the language of Section 7.6(a).  Section 7.6(a) provides for access to records "reasonably necessary" to verify the accuracy of Product Sales Statements and the figures underlying the calculations set forth therein.  CVR Agreement § 7.6(a); Sanofi SOF ¶ 10. It is not "reasonably necessary" for the Trustee to access *any* records while the parties' dispute over the appropriate PSM1 measuring period remains unresolved.

## II.     RULE 56(d) PRELUDES THE ENTRY OF SUMMARY JUDGMENT

Under Rule 56(d), the Court may defer or deny a motion for summary judgment if the non-movant establishes that it cannot present facts essential to its opposition.  *See* Fed. R. Civ. P. 56(d); *see also, e.g.*, *CMEG NYMEX Holding Inc. v. Optionable, Inc.*, 2012 WL 3683560, at *7 (S.D.N.Y. Aug. 24, 2012) (Daniels, J.) (denying summary judgment because "fact discovery [was] necessary to determine whether any of the numerous affirmative defenses proffered by Defendants preclude[d] liability" on the claim at issue); *see also Flood v. Carlson Rests. Inc.*, 2016 WL 3221146, at *7 (S.D.N.Y. June 7, 2016) (denying summary judgment in order to allow defendant to take additional discovery from third parties).  Indeed, Rule 56(d) is to be "liberally construed," *Elliott Assocs., L.P. v. Republic of Peru*, 961 F. Supp. 83, 86 (S.D.N.Y. 1997), and motions for summary judgment before the necessary discovery is complete should be granted "[o]nly in the rarest of cases."  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-04 (2d Cir. 2003).

In order to invoke Rule 56(d), the non-movant must submit an affidavit or declaration demonstrating:  "(1) what facts are sought to [resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."

---

Sales, only four quarters will actually matter for purposes of calculating whether PSM1 "should have been paid but was not paid when due."

*Id.* at 303 (alteration in original) (quotations omitted).  As demonstrated below and in the accompanying Venezia Declaration, Sanofi has satisfied this standard, and Plaintiff's motion for summary judgment must therefore be denied on this basis as well.

### A.   Fact Discovery Is Likely To Create A Genuine Issue Of Material Fact

Sanofi has, for some time, sought document discovery from Plaintiff and certain CVR holders in an effort to test the legitimacy of and motives behind Plaintiff's exercise of certain of its alleged contractual rights, as well as the motives and intent of those CVR holders who are actually funding, or otherwise participating in the direction of, this litigation.  Sanofi SOF ¶¶ 20, 23-24, 27, 29-30, 35; Venezia Decl. ¶¶ 3, 6, 9-10, 13, 26-27, 33.  The discovery sought would shed light on whether (as Sanofi believes) Plaintiff's seriatim requests for relief under the CVR Agreement, which began in earnest in December 2016 (just a few months after this Court's September Opinion and Order), are part of a concerted effort to harass and unduly burden Sanofi or otherwise gain leverage over Sanofi in the context of this litigation.

Plaintiff asserts that it has an "absolute and unequivocal" right to an audit under Section 7.6.  Mem. at 8.  However, Sanofi has asserted affirmative defenses to Count VI that would extinguish any liability under the CVR Agreement.[11]  Under New York law, contract provisions that confer discretion, such as Section 7.6, may not be exercised "arbitrarily or irrationally." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).  This principle has been applied to limit the exercise of even "unfettered" contractual rights.  *E.g.*, *Richbell*, 309 A.D.2d at 302-03 (examining party's entire course of conduct and stating that "an explicitly discretionary contract right may not be exercised in bad faith" or for "an illegitimate purpose").[12]

---

[11] Sanofi asserted these defenses in its Answer to Plaintiff's First Amended Complaint (ECF No. 94 at 33) and in its Answer to the SAC (ECF No. 132 at 48).

[12] The only limitation on the rule announced in *Richbell* is where a contract *expressly permits* unlimited discretion, for example, the ability to terminate "without cause."  *See, e.g.*, *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp.

12

For this reason, the discovery Sanofi seeks may well have a dispositive effect on the Motion. Indeed, courts have denied summary judgment on breach of contract claims where a non-movant raises a triable issue of fact in support of an affirmative defense that the counterparty's conduct violated the implied covenant of good faith or amounted to bad faith. *See, e.g.*, *Aurora Loan Serv., LLC v. Thomas*, 53 A.D.3d 561 (2d Dep't 2008) (triable issues of fact regarding bad faith defense "precluded the granting of summary judgment to the plaintiff" on breach of contract claim); *see also Bombardier Capital Inc. v. Reserve Capital Corp.*, 295 A.D.2d 793 (3d Dep't 2002) (denial of summary judgment proper because "a breach of the implied covenant of good faith" would "excuse further performance on part of defendants").[13] The same result should follow here.

## B.     Plaintiff Has Stymied Sanofi's Attempts To Obtain Relevant Discovery

At the time Plaintiff initially demanded the audit from Sanofi on December 19, 2016, Sanofi had outstanding document requests pending to Plaintiff. Sanofi SOF ¶ 23; Venezia Decl. ¶¶ 9, 18. Among other things, those requests sought: (i) all documents reviewed, received or relied upon in connection with the allegations asserted in the complaint (Request No. 2); (ii) all communications with CVR holders relating to, among other things, the action and the claims asserted therein (Request No. 6); and (iii) all documents concerning the CVR Agreement (Request No. 15). Sanofi SOF ¶ 23; Venezia Decl. Ex. 6 at 6-8. After mutually agreeing on the appropriate scope of electronic discovery, Plaintiff began producing documents in February 2017. Sanofi SOF

---

2d 447, 467 (S.D.N.Y. 2013), *aff'd*, 788 F.3d 98 (2d Cir. 2015) (contracts "may negate a limitation on the exercise of a contractual right by defining when, with greater precision, discretion may or may not be exercised"). The CVR Agreement does not confer such unlimited discretion on Plaintiff.

[13] Further, in analogous contexts, courts have concluded that the bad faith exercise of a right, particularly in the context of ongoing litigation, may negate such right. *See, e.g.*, *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1148 (Del. 2011) (pending derivative action precluded a stockholder from exercising its statutory inspection right); *Pershing Square v. Ceridian Corp.*, 923 A.2d 810, 820 (Del. Ch. 2007) (stockholder's improper purpose and bad faith negated its right to inspect corporate books and records).

¶ 27; Venezia Decl. ¶ 20; Venezia Decl. Ex. 14.  None of the 2,064 documents Plaintiff produced address its request for an audit under Section 7.6 of the CVR Agreement, much less any direction by the Acting Holders that such request be made.

Plaintiff will likely claim that it has completed its production of documents and, thus, that no additional discovery is necessary.  Sanofi disagrees, as it learned for the first time in connection with this Motion that, on December 14, 2016 (*i.e.*, five days *after* the previously agreed upon December 9, 2016 discovery cutoff for Plaintiff's production), Plaintiff "was asked by [the] Acting Holders to exercise any and all rights available under Section 7.6 of the CVR Agreement." Wilkinson Decl. ¶ 11.  "Pursuant to the request of the Acting Holders, [Mr. Wilkinson then] asked counsel for Plaintiff to communicate the request for an audit pursuant to Section 7.6(a) of the CVR Agreement to Sanofi c/o its counsel in this action."  *Id*.  Accordingly, given that the Acting Holders' purported direction post-dated the agreed upon December 9 cutoff for Plaintiff's production, it is not surprising that *none* of the documents Plaintiff has produced to date address its request for an audit, or the Acting Holders' demand for the same, under Section 7.6. Venezia Decl. ¶¶ 4, 18; Venezia Decl. Ex. 13 at 4.[14]  For this reason alone, Sanofi is entitled to, among other things, additional document discovery from Plaintiff, and it intends to revisit Plaintiff's failure to produce documents beyond December 9, 2016.

Beyond Plaintiff's own failings, and perhaps more egregiously given that the evidence regarding the genesis of the audit request is likely entirely within the control of the CVR holders, *see Elliot Assocs.*, 961 F. Supp. at 86-87, Plaintiff has stymied Sanofi's efforts to obtain pertinent records from a subset of those holders.  Sanofi SOF ¶¶ 31, 33; Venezia Decl. ¶¶ 4, 28, 30, 32.   As

---

[14] Given the statement in Mr. Wilkinson's Declaration that he had direct communications with the CVR holders before relaying their request to counsel, there is no way such communications were privileged and immune from discovery.

discussed above, on June 6, 2017, Sanofi subpoenaed 26 CVR holders that were specifically

identified as ████████████████████████████████████████████████

████████████████.  Sanofi SOF ¶ 29; Venezia Decl. Exs. 16 at 6-8, 17.   The subpoenas seek,

among other things, documents regarding the initiation of this action (including all of the

subsequent amendments thereto), the CVRs and the CVR Agreement, and specific

communications or agreements between any of the CVR holders and other persons relating to the

litigation.  Sanofi SOF ¶ 30; Venezia Decl. Ex. 17.

        Shortly after the issuance of the subpoenas, and without adequately conferring with respect

thereto, Plaintiff moved to quash all 26 of them and for the entry of a protective order. Sanofi SOF

¶ 31; Venezia Decl. ¶ 28.  Magistrate Judge Francis denied that motion, without prejudice, as

premature, and directed the parties, along with the Subpoena Recipients, to meet and confer.  (ECF

No. 123 at 5-7.)  In accordance with that order, the parties and Subpoena Recipients met and

conferred by telephone on August 16 and September 29, 2017, and also exchanged written

correspondence.  Venezia Decl. ¶ 32.

        The efforts to reach a compromise, however, have been unsuccessful to date, due in large

part to the fact that Plaintiff has injected itself into the discussions as the lead -- indeed, only --

negotiator.  In so doing, Plaintiff has stonewalled Sanofi's efforts to compromise and engage

directly with the CVR holders to better understand any individual concerns they may have by

unilaterally speaking on their behalf and adopting a one-size-fits-all approach to the subpoenas --

and one in which few, if any, documents would be produced in response to any of them.  As a

result, Sanofi recently submitted a letter to Magistrate Judge Lehrburger requesting that he enforce

the subpoenas and direct the production of documents from the Subpoena Recipients.  (ECF No.

148.)  At a conference on November 16, 2017, Magistrate Judge Lehrburger directed the parties

to continue their discussions and jointly report back to the Court on the status of their efforts by November 22, 2017.

For the above reasons, summary judgment is inappropriate at this time.

## CONCLUSION

For the foregoing reasons, Sanofi respectfully requests that the Court deny the Motion in its entirety.

Dated: New York, New York        /s/ John A. Neuwirth
      November 17, 2017        John A. Neuwirth
                         Joshua S. Amsel
                         Stefania D. Venezia
                         Justin D. D'Aloia
                         WEIL, GOTSHAL & MANGES LLP
                         767 Fifth Avenue
                         New York, New York 10153
                         Tel:  (212) 310-8000
                         Fax:  (212) 310-8007

                         *Attorneys for Sanofi*

WEIL:\96353235\1\71937.0101