UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UMB BANK, N.A., as Trustee, : <br> : <br> Plaintiff, : <br> : Case No. 15 Civ. 8725 (GBD) (RWL) <br> v. : <br> : ECF CASE <br> SANOFI, : <br> : <br> Defendant. : <br> : | |

## SANOFI'S LOCAL RULE 56.1 STATEMENT

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Sanofi, by and through its undersigned counsel, respectfully submits the following Response to Plaintiff's Statement of Facts in Support of Plaintiff UMB Bank, N.A.'s Motion for Summary Judgment as to Count VI of Plaintiff's Second Amended Complaint for Declaratory Judgment and to Compel Sanofi to Submit to an Independent Audit of its Product Sales Statements and the Figures Underlying the Calculations Set Forth Therein ("Plaintiff's 56.1 Statement") (ECF No. 138), which also includes certain additional facts as to which Sanofi contends there is no genuine issue to be tried.

## GENERAL RESPONSE

For purposes of this Response, each numbered paragraph below corresponds to the same numbered paragraph in Plaintiff's 56.1 Statement. For the Court's convenience, the full text of each paragraph of Plaintiff's 56.1 Statement is reprinted in italics. Any footnotes originally contained in Plaintiff's 56.1 Statement are similarly reprinted in italics.[1]

---

[1] "Andrus Decl." refers to the Declaration of Brent L. Andrus, dated October 5, 2017 (ECF No. 136), and "Wilkinson Decl." refers to the Declaration of Gavin Wilkinson, dated October 5, 2017 (ECF No. 137), both submitted in support of Plaintiff's summary judgment motion. "Venezia Decl." refers to the accompanying

## SPECIFIC RESPONSES

**Plaintiff's Paragraph No. 1**

1.     *To enable its 2011 acquisition of Genzyme, Defendant Sanofi issued contingent value rights ("CVRs") to Genzyme shareholders and entered into a Contingent Value Rights Agreement (the "CVR Agreement") to establish an express trust for the benefit of the CVR holders (the "Holders"). Declaration of Gavin Wilkinson ("Wilkinson Dec.") ¶ 2.*

1.     **Response**: Sanofi does not dispute that, in connection with its April 2011 acquisition of Genzyme Corporation ("Genzyme"), beneficial owners of Genzyme common stock received one contingent value right ("CVR") (plus $74.00 in cash) in exchange for each share of Genzyme common stock, in accordance with the terms of the Agreement and Plan of Merger, dated as of February 16, 2011, by and among Sanofi, GC Merger Corp. and Genzyme. Nor does Sanofi dispute that it entered into the Contingent Value Rights Agreement, dated March 30, 2011 (the "CVR Agreement"), with then-Trustee American Stock Transfer & Trust Company, LLC ("AST").  To the extent Plaintiff purports to summarize the CVR Agreement, Sanofi refers to the CVR Agreement for a complete and accurate description of its contents.  *See generally* Wilkinson Decl. Ex. A.

**Plaintiff's Paragraph No. 2**

2.     *Plaintiff UMB Bank, N.A. serves as Trustee of the CVR Agreement, which is an express trust.[2] The Trustee is not a CVR Holder and has no stake in the CVRs. The Trustee*

---

Declaration of Stefania D. Venezia, dated November 17, 2017, submitted in opposition to Plaintiff's summary judgment motion.

[2]     *UMB became successor Trustee of the CVR Agreement on July 19, 2016 pursuant to Court's substitution Order (ECF No. 66).*

**Response**: Sanofi disputes this statement because it is not supported by the cited material.  UMB Bank, N.A. became the successor Trustee on June 30, 2016 pursuant to an Instrument of Appointment and Acceptance between Sanofi and UMB Bank, N.A.  *See* Venezia Decl. Ex. 5.

*administers the CVR Agreement pursuant to which Sanofi issued the CVRs to the Holders. Wilkinson Dec. ¶ 3.*

2.     **Response**: Sanofi does not dispute that Plaintiff currently serves as Trustee under the CVR Agreement.  Sanofi lacks knowledge and information to assess the truthfulness of the statement that the Trustee is not a CVR holder and has no stake in the CVRs.  To the extent Plaintiff purports to summarize the CVR Agreement, Sanofi refers to the CVR Agreement for a complete and accurate description of its contents.  *See generally* Wilkinson Decl. Ex. A.

**Plaintiff's Paragraph No. 3**

3.     *The value of the CVRs is tied to Sanofi's achievement of certain milestones, among other things, selling defined volumes of defined Product in defined periods.  Wilkinson Dec. ¶ 4.*

3.     **Response**: Sanofi disputes the statements contained in this paragraph because they are not supported by the cited materials and reflect Plaintiff's subjective characterization thereof.  To the extent Plaintiff purports to summarize the CVR Agreement, Sanofi refers to the CVR Agreement for a complete and accurate description of its contents.  *See generally* Wilkinson Decl. Ex. A.

**Plaintiff's Paragraph No. 4**

4.     *The CVR Agreement requires Sanofi to provide the Trustee with information. Pursuant to Section 5.4(a) the CVR Agreement, Sanofi is obligated periodically to provide certain financial information, including Product Sales Statements on a quarterly basis and to certify the accuracy thereof.  The Product Sales Statements provide information on Product Sales that is used to calculate compliance with the Product Sales Milestones in the CVR Agreement.  CVR Agreement, § 5.4(b).*

3

4. **Response**: Sanofi does not dispute that Section 5.4(a)(iv) of the CVR Agreement calls for it to periodically file with the Trustee a Product Sales Statement with respect to the last completed Product Sales Measuring Period, as those terms are defined in Section 1.1 of the CVR Agreement. *See* Wilkinson Decl. Ex. A §§ 1.1, 5.4(a)(iv). To the extent Plaintiff purports to summarize the CVR Agreement, Sanofi refers to the CVR Agreement for a complete and accurate description of its contents. *See generally* Wilkinson Decl. Ex. A.

**Plaintiff's Paragraph No. 5**

5. *Section 5.4 (b) of the CVR Agreement requires Sanofi to "file with the Trustee such additional information, documents and reports with respect to compliance by [Sanofi] with the conditions and covenants of this CVR Agreement as may be required from time to time by the Trustee . . . ." CVR Agreement, § 5.4(b).*

5. **Response**: Sanofi does not dispute that Plaintiff quotes an excerpt from Section 5.4(b) of the CVR Agreement. Wilkinson Decl. Ex. A § 5.4(b). Sanofi refers to the CVR Agreement for the full text of Section 5.4(b). *See id.*

**Plaintiff's Paragraph No. 6**

6. *Section 5.5 of the CVR Agreement requires Sanofi to deliver to the Trustee an annual statement "to be executed by the principal executive officer, principal financial officer or principal accounting officer of [Sanofi]" that states "whether or not, to the best knowledge of the signer(s) thereof, [Sanofi] is in breach in the performance and observance of any terms, provisions or conditions of this CVR Agreement (without regard to any period of grace or requirement of notice provided hereunder)." CVR Agreement, § 5.5.*

6. **Response**: Sanofi does not dispute that Plaintiff quotes excerpts from Section 5.5 of the CVR Agreement. Wilkinson Decl. Ex. A § 5.5. Sanofi refers to the CVR Agreement for the full text of Section 5.5. *See id.*

**Plaintiff's Paragraph No. 7**

*7. Section 7.6(a) of the CVR Agreement expressly obligates Sanofi to submit to an independent audit in order to verify the accuracy of the Product Sales Statements provided by Sanofi, and the figures underlying the calculations set forth therein. CVR Agreement, § 7.6(a).*

7. **Response**: Sanofi disputes that it is expressly obligated to submit to the requested audit. To the extent Plaintiff purports to summarize Section 7.6(a) of the CVR Agreement, Sanofi refers to the CVR Agreement for a complete and accurate description of its contents. *See generally* Wilkinson Decl. Ex. A.

**Plaintiff's Paragraph No. 8**

*8. Specifically, Section 7.6(a) of the CVR Agreement provides:*

> "Upon written request of the Acting Holders (but no more than once during any calendar year), and upon reasonable notice, [Sanofi] shall provide an independent certified public accounting firm of nationally recognized standing jointly agreed upon by the Acting Holders and [Sanofi] . . . (the "<u>Independent Accountant</u>") with access during normal business hours to such of the records of [Sanofi] as may be reasonably necessary to verify the accuracy of the statements set forth in the Product Sales Statements and the figures underlying the calculations set forth therein for any period within the preceding three (3) years that has not previously been audited in accordance with this Section 7.6. The fees charged by such accounting firm shall be paid by [Sanofi]." CVR Agreement, § 7.6(a).

8. **Response**: Sanofi does not dispute that Plaintiff quotes an excerpt from Section 7.6(a) of the CVR Agreement. Wilkinson Decl. Ex. A § 7.6(a). Sanofi refers to the CVR Agreement for the full text of Section 7.6(a). *See id.*

**Plaintiff's Paragraph No. 9**

9.  *Section 7.6(a) is plain, unambiguous and mandatory.  Wilkinson Dec. ¶ 10.*

9.  **Response**:  Sanofi disputes the statements contained in this paragraph because they are not supported by the cited material and reflect Plaintiff's subjective characterization thereof.  *See* Wilkinson Decl. ¶ 10.  In addition, the statements contained in this paragraph are argumentative and set forth legal conclusions that are not appropriate for inclusion in the statement of material facts required by Local Rule 56.1.  Sanofi refers to the CVR Agreement for the full text of Section 7.6(a).  *See* Wilkinson Decl. Ex. A § 7.6(a).

**Plaintiff's Paragraph No. 10**

10.  *The CVR Agreement also expressly provides that the Trustee is entitled, "at the sole cost of [Sanofi]," to such additional information as it may in the exercise of its discretion request – including, without limitation, access to the books, record and premises of Sanofi, personally or by agent or attorney, so that the Trustee can assess Sanofi's performance under the CVR Agreement and the Holders' entitlement to payment under the CVRs.  CVR Agreement, § 4.2(f).*

10.  **Response**:  Sanofi does not dispute that Plaintiff quotes an excerpt from Section 4.2(f) of the CVR Agreement.  Wilkinson Decl. Ex. A § 4.2.  To the extent Plaintiff purports to summarize the CVR Agreement, Sanofi refers to the CVR Agreement for a complete and accurate description of its contents.  *See id.*

**Plaintiff's Paragraph No. 11**

11.  *Specifically, Section 4.2(f) of the CVR Agreement provides:*

> *"[T]he Trustee in its discretion may make such further inquiry or investigation into such facts or matters as it may see fit, and if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of [Sanofi], personally or by agent or attorney, as*

*necessary for such inquiry or investigation at the sole cost of [Sanofi] and shall incur no liability of any kind by reason of such inquiry or investigation other than as a result of the Trustee's gross negligence or willful misconduct." CVR Agreement, §4.2(f).*

11.     **Response**: Sanofi does not dispute that Plaintiff quotes an excerpt from Section 4.2(f) of the CVR Agreement. Wilkinson Decl. Ex. A § 4.2. Sanofi refers to the CVR Agreement for the full text of Section 4.2(f). *See id.*

**Plaintiff's Paragraph No. 12**

*12.     The Acting Holders have an absolute right "to verify the accuracy of the statements set forth in the Product Sales Statements and the figures underlying the calculations set forth therein" by an independent audit, and the parties already agreed that "[t]he fees charged by such accounting firm shall be paid by [Sanofi]." CVR Agreement, § 7.6(a).*

12.     **Response**: Sanofi does not dispute that Plaintiff quotes an excerpt from Section 7.6(a) of the CVR Agreement. Wilkinson Decl. Ex. A § 7.6(a). Sanofi disputes the statement that the Acting Holders have "an absolute right" under Section 7.6(a) of the CVR Agreement because it is not supported by the cited material and reflects Plaintiff's subjective characterization thereof. *See* Wilkinson Decl. ¶ 10. In addition, the statement that the Acting Holders have "an absolute right" under Section 7.6(a) is argumentative and sets forth a legal conclusion that is not appropriate for inclusion in the statement of material facts required by Local Rule 56.1. Sanofi refers to the CVR Agreement for the full text of Section 7.6(a). *See* Wilkinson Decl. Ex. A § 7.6(a).

**Plaintiff's Paragraph No. 13**

13. *On December 14, 2016, Gavin Wilkinson was asked by Acting Holders[3] to exercise any and all rights available under Section 7.6 of the CVR Agreement. Wilkinson Dec. ¶ 11.*

13. **Response**: Sanofi lacks knowledge and information to assess the truthfulness of the statement contained in this paragraph.

**Plaintiff's Paragraph No. 14**

14. *Pursuant to the request of the Acting Holders, Gavin Wilkinson asked counsel for Plaintiff to communicate the request for an audit pursuant to Section 7.6(a) of the CVR Agreement to Sanofi c/o its counsel in this action. Counsel for Plaintiff Trustee did so by letter to counsel for Defendant Sanofi, dated December 19, 2016, Re line "Request Pursuant to Section 7.6(a) of the CVR Agreement." Wilkinson Dec. ¶ 11; See Andrus Dec., Ex. A.*

14. **Response**: Sanofi does not dispute that its counsel received a letter dated December 19, 2016 from Plaintiff's counsel, which letter requested an audit under Section 7.6(a) of the CVR Agreement (the "December 19 Letter"). To the extent Plaintiff purports to summarize the December 19 Letter, Sanofi refers to that letter for a complete and accurate description of its contents. *See* Andrus Decl. Ex. A. Sanofi lacks knowledge and information to assess the truthfulness of the remaining statements contained in this paragraph.

**Plaintiff's Paragraph No. 15**

15. *Counsel for Defendant Sanofi responded by letter to counsel for Plaintiff Trustee, dated January 12, 2017, Re line "Requests Pursuant to Section 4.2(f), 5.4(b) and 7.6(a) of the*

---

[3] *As defined in Section 1.1 of the CVR Agreement, the term Acting Holders "means, at the time of determination, Holders of at least thirty percent (30%) of the Outstanding CVRs."*

**Response**: Sanofi does not dispute that Plaintiff quotes an excerpt from Section 1.1 of the CVR Agreement. Sanofi refers to the CVR Agreement for the full text of Section 1.1. *See* Wilkinson Decl. Ex. A § 1.1.

*CVR Agreement". As set forth in Defendant Sanofi's letter, Sanofi has refused to allow an independent audit of its Product Sales Statements and the figures underlying the calculations set forth therein. Wilkinson Dec. ¶ 12; See Andrus Dec., Ex. B.*

15.     **Response**: Sanofi does not dispute that, on January 12, 2017, its counsel, on its behalf, responded to, among other requests by Plaintiff, the December 19 Letter. *See* Andrus Decl. Ex. B. Sanofi also does not dispute that it did not agree to Plaintiff's request for an audit. To the extent Plaintiff purports to summarize Sanofi's counsel's January 12, 2017 letter, Sanofi refers to that letter for a complete and accurate description of its contents. *See id.*

**Plaintiff's Paragraph No. 16**

16.     *Section 7.4(c) of the CVR Agreement provides that, "[u]pon the expiration of three (3) years following the end of any Product Sales Measuring Period, the calculations set forth in the Product Sales Statement shall be conclusive and binding on each Holder." CVR Agreement, § 7.4(c).*

16.     **Response**: Sanofi does not dispute that Plaintiff quotes an excerpt from Section 7.6(c) of the CVR Agreement. Wilkinson Decl. Ex. A § 7.6(c). Sanofi refers to the CVR Agreement for the full text of Section 7.6(c). *See id.*

**Plaintiff's Paragraph No. 17**

17.     *Section 7.6(b) of the CVR Agreement states that if the Independent Accountant concludes that a milestone should have been paid but was not (defined as a "CVR Shortfall" in the CVR Agreement), Sanofi would be required to pay this missed milestone, along with interest at the contract rate.[4] CVR Agreement, §7.6(b).*

---

[4] "If the Independent Accountant concludes that the Production Milestone Payment or any Product Sales Milestone Payment should have been paid but was not paid when due, [Sanofi] shall pay each Holder of a CVR the amount of such Production Milestone Payment or Product Sales Milestone Payment . . . as

9

17.     **Response**: Sanofi does not dispute that a CVR Shortfall is defined in Section 7.6(b) of the CVR Agreement. Wilkinson Decl. Ex. A § 7.6(b). To the extent Plaintiff purports to summarize the CVR Agreement, Sanofi refers to the CVR Agreement for a complete and accurate description of its contents. *See id.*

**Plaintiff's Paragraph No. 18**

*18.     The numbers found by the Independent Accountant in its decision concerning a CVR Shortfall "shall be final, conclusive and binding on [Sanofi] and the Holders, shall be non-appealable and shall not be subject to further review." CVR Agreement, § 7.6(b).*

18.     **Response**: Sanofi does not dispute that Plaintiff quotes an excerpt from Section 7.6(b) of the CVR Agreement. Wilkinson Decl. Ex. A § 7.6(b). Sanofi refers to the CVR Agreement for the full text of Section 7.6(b). *See id.*

## SANOFI'S COUNTER-STATEMENT OF MATERIAL FACTS

1.     On September 8, 2016, this Court granted, in part, Sanofi's motion to dismiss and denied Plaintiff's summary judgment motion. *See UMB Bank, N.A. v. Sanofi*, 2016 WL 4938000, at *7-8 (S.D.N.Y. Sept. 8, 2016).

*The CVR Agreement*

2.     The CVR Agreement sets forth the terms of the relationship between Sanofi and the Trustee with respect to the CVRs. *See generally* Wilkinson Decl. Ex. A.

3.     Section 1.10 of the CVR Agreement provides that "the CVR Agreement and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or

---

*applicable . . . plus interest . . . at the Shortfall Interest Rate . . . to the date of actual payment (such amount including interest being the 'CVR Shortfall').*" CVR Agreement § 7.6(b).

**Response**: Sanofi does not dispute that Plaintiff quotes excerpts from Section 7.6(b) of the CVR Agreement. Wilkinson Decl. Ex. A § 7.6(b). Sanofi refers to the CVR Agreement for the full text of Section 7.6(b). *See id.*

relate to this CVR Agreement . . . or the [CVRs], shall be governed by and construed in accordance with the laws of the State of New York." *Id.* § 1.10 (capitalization omitted).

4. Under the CVR Agreement, CVR holders are entitled to certain payments if and when certain milestones – relevant here, Product Sales Milestone #1 ("PSM1") – are achieved. *Id.* at 2-3, 7-8, 11-12.

5. Milestone payments under the CVR Agreement are not guaranteed. *Id.* § 7.10; *see also id.* § 1.1.

6. In the CVR Agreement, "Product Sales Milestone #1" means "the first instance in which the sum of (x) the aggregate Major Market Product Sales for each Qualifying Major Market plus (y) the aggregate Product Sales achieved in all countries that are not Qualifying Major Markets during the four (4)-calendar quarter period that begins on the first anniversary of Product Launch equals or exceeds a total of four hundred million dollars ($400,000,000)." *Id.* § 1.1.

7. In the CVR Agreement, "Major Market Product Sales" means, "with respect to each Major Market, the aggregate Product Sales in such Major Market that occur during the four (4)-calendar quarter period commencing immediately after the calendar quarter in which the First Commercial Sale is made in such Major Market." *Id.*

8. In the CVR Agreement, "Qualifying Major Market" means "a Major Market in which the First Commercial Sale has been made at any time on or before the end of the sixth (6th) calendar quarter immediately following the calendar quarter in which the Product Launch occurs." *Id.*

9. The Major Markets are the United States, the United Kingdom, France, Germany, Italy and Spain. *Id.*

10. Section 7.6(a) of the CVR Agreement provides that "[u]pon the written request of the Acting Holders (but no more than once during any calendar year) . . . the Company shall provide an independent certified public accounting firm of nationally recognized standing jointly agreed upon by the Acting Holders and the Company . . . with access during normal business hours to such of the records of the Company as may be reasonably necessary to verify the accuracy of the statements set forth in the Product Sales Statements and the figures underlying the calculations set forth therein for any period within the preceding three (3) years that has not previously been audited in accordance with this Section 7.6." Wilkinson Decl. Ex. A § 7.6(a).

11. Section 7.6(b) of the CVR Agreement provides that "[i]f the Independent Accountant concludes that . . . any Product Sales Milestone Payment should have been paid but was not paid when due, the Company shall pay each Holder of a CVR the amount of such . . . Product Sales Milestone Payment . . . plus interest . . . (such amount including interest being the "CVR Shortfall")." *Id.* § 7.6(b).

12. Under the CVR Agreement, "Acting Holders" means, "at the time of determination, Holders of at least thirty percent (30%) of the Outstanding CVRs." *Id.* § 1.1.

***Product Launch***

13. On January 16, 2014, Sanofi notified the CVR holders that "the first paid commercial disposition of Lemtrada® as a product approved for the treatment of multiple sclerosis occurred in Germany in the course of October 2013" and qualified as "the First Commercial Sale" under the CVR Agreement. Venezia Decl. Ex. 1.

14. Also on January 16, 2014, Sanofi notified the CVR holders that "[t]he occurrence of the first First Commercial Sale in Q4 2013 means that Product Launch is deemed to occur on April 1, 2014 for the purposes of the CVR Agreement." *Id.*

15. In the CVR Agreement, "Product Launch" means "the first day of the calendar quarter beginning one full calendar quarter after the end of the calendar quarter in which a First Commercial Sale first occurs in any Major Market." Wilkinson Decl. Ex. A § 1.1.

16. Based on a Product Launch date of April 1, 2014, both parties to this litigation initially agreed that the last date to achieve PSM1 was June 30, 2016. *See* ECF No. 26 at 10 n.9; ECF No. 77 at 6:16-18; *UMB Bank*, 2016 WL 4938000, at *2 n.4.

17. Plaintiff now disputes that the measuring period for PSM1 ended on June 30, 2016. On March 16, 2017, Plaintiff informed Sanofi for the first time that it "believes that Product Launch may not have occurred in Germany on April 1, 2015 [sic] as originally assumed by the parties," and that Product Launch "occurred in the UK, no earlier than January 1, 2015." Venezia Decl. Ex. 15 at 2; *see also* Plaintiff's Memorandum of Law in Support of Motion to Compel the Production of Documents ("Pl.'s Mot. to Compel") (ECF No. 129) at 12 ("The dispute centers on whether early sales in Germany qualify as a First Commercial Sale and, thus, started the clock for the measuring period for PSM #1.").

18. Since that time, Plaintiff has consistently disputed that Product Launch occurred on April 1, 2014. *See* SAC (ECF No. 125) ¶ 28 ("Sanofi *claims*" that June 30, 2016 is the deadline for PSM1) (emphasis added); Pl.'s Mot. to Compel (ECF No. 129) at 2-3 ("[T]he parties now dispute the date of Product Launch for Lemtrada, which, in turn, defines the applicable measuring period for PSM #1."); Pl.'s Mot. to Compel at 11 ("The parties dispute the date of Product Launch for Lemtrada. This is an important issue in this case because that date determines the correct measuring period for PSM #1."); Plaintiff's Reply Memorandum of Law in Support of Motion to Compel the Production of Documents (ECF No. 141) at 7 ("the parties dispute the correct measuring period for PSM #1").

13

19. Plaintiff now contends that the measuring period for PSM1 may have extended as far as December 31, 2016. *See, e.g.*, Pl.'s Mot. to Compel (ECF No. 129) at 3 ("Other documents also suggest that the PSM # 1 measuring period would extend to December 31, 2016.").

***Sanofi Has Sought Relevant Discovery From Plaintiff***

20. On March 4, 2016, Sanofi served interrogatories on then-Plaintiff AST requesting that it identify, among other things, any CVR holders that "directed, requested or otherwise recommended" that it pursue claims against Sanofi under the CVR Agreement. *See* Venezia Decl. Ex. 2 at 5-6.

21. On April 6, 2016, then-Plaintiff AST asserted that, "after entry of a protective order, Plaintiff will identify any CVR Holders who, through counsel or otherwise, directed, requested, or recommended that the Trustee investigate whether Sanofi breached the CVR Agreement," but did not provide any additional information. *See* Venezia Decl. Ex. 3 at 7-9.

22. On June 24, 2016, then-Plaintiff AST identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Venezia Decl. Ex. 4 at 4-5.

23. On August 9, 2016, Sanofi served document requests on Plaintiff[5] requesting that it produce, among other things: (i) all documents "received, reviewed, relied upon or otherwise used" in connection with its investigation into the allegations asserted in the original complaint (Request No. 2); (ii) all communications with CVR holders (Request No. 6); and (iii) all documents concerning the CVR Agreement (Request No. 15). *See* Venezia Decl. Ex. 6 at 6-8.

---

[5] AST resigned as Trustee in May 2016, UMB Bank, N.A. was appointed as successor Trustee in June 2016, and, on July 19, 2016, the Court granted UMB Bank N.A.'s unopposed motion to substitute into this case as Plaintiff for then-Plaintiff AST. (ECF No. 66.)

WEIL:\96353240\1\71937.0101

24.     On August 11, 2016, Sanofi served interrogatories on Plaintiff requesting that it identify, among other things, any CVR holder "that directed, requested or otherwise recommended that [Plaintiff] perform any action or exercise any right or remedy under the CVR Agreement, and identify the action(s) that such CVR Holder(s) directed, requested or otherwise recommended." *See* Venezia Decl. Ex. 7 at 6.

25.     On September 15, 2016, Plaintiff agreed to produce "non-privileged communications between Plaintiff and any CVR Holder or representative of any CVR Holder during the Relevant Period, if any, insofar as they relate to the subject matter of the Action." *See* Venezia Decl. Ex. 8 at 9.

26.     On September 15, 2016, Plaintiff responded that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Venezia Decl. Ex. 9 at 11.

27.     On February 2, 2017, Plaintiff and Sanofi, based on information then available to Sanofi, agreed on search parameters with respect to electronic discovery of Plaintiff, including a December 9, 2016 cutoff for purposes of Plaintiff's document production. *See* Venezia Decl. Ex. 13 at 4.  Plaintiff began producing documents on February 10, 2017, which production included a copy of the Funding Agreement entered into among Plaintiff, Plaintiff's counsel and certain CVR holders. *See* Venezia Decl. Exs. 10, 14.

***Sanofi Has Sought Relevant Discovery from Certain CVR Holders***

28.     On April 12, 2017, Plaintiff identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████

███████████████████████████████████████ *See* Venezia Decl. Ex. 16 at 6-8.

29. On June 6, 2017, Sanofi subpoenaed 26 CVR holders (the "Subpoena Recipients") that were specifically identified as ████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████. *See* Venezia Decl. Ex. 17.

30. The subpoenas served on the Subpoena Recipients requested documents concerning, among other things, this action, the CVR Agreement, any rights or remedies available under the CVR Agreement, and the investigation of any claims against Sanofi under the CVR Agreement. *See* Venezia Decl. Ex. 17.

31. On June 19, 2017, Plaintiff filed a letter motion seeking to quash or limit the subpoenas. (ECF No. 111.)

32. On June 30, 2017, Sanofi filed a letter opposing Plaintiff's request. (ECF No. 113.)

33. On July 5, 2017, Plaintiff replied to Sanofi's letter (ECF No. 115) and 23 of the 26 Subpoena Recipients joined Plaintiff's request. (ECF No. 117.)

34. On August 10, 2017, Magistrate Judge Francis denied Plaintiff's motion, without prejudice, as premature and directed the parties and the Subpoena Recipients to meet and confer regarding the subpoenas. (ECF No. 123 at 5-7.) The parties' meet-and-confer efforts to date have been unsuccessful.

*Sanofi Continues to Seek Discovery Relevant to Count VI*

35. On November 13, 2017, Sanofi submitted a letter to Magistrate Judge Lehrburger requesting that the Court enforce the subpoenas and direct the production of documents from the Subpoena Recipients. (ECF No. 148.)

36. At a conference on November 16, 2017, Magistrate Judge Lehrburger directed the parties to continue their discussions and jointly report back to the Court on the status of their efforts by November 22, 2017.

Dated: New York, New York
November 17, 2017

/s/ John A. Neuwirth

John A. Neuwirth
Joshua S. Amsel
Stefania D. Venezia
Justin D. D'Aloia
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Sanofi*