```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
2

3    --------------------------------X
                                     :
4    UMB BANK, N.A.,                 :
                                     : 15-CV-08725 (GBD)
5                Plaintiff,          :
              v.                     : November 16, 2017
6                                    :
     SANOFI,                         : 500 Pearl Street
7                                    : New York, New York
                 Defendant.          :
8    --------------------------------X

9        TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
            BEFORE THE HONORABLE ROBERT W. LEHRBURGER
10                UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:

12

13   For the Plaintiff:      CHARLES GILMAN, ESQ.
                             MICHAEL WEISS, ESQ.
                             Cahill Gordon & Reindel LLP
14                           80 Pine Street
                             New York, New York 10005
15

16   For the Defendant:      JOHN NEUWIRTH, ESQ.
                             STEFANIA VENEZIA, ESQ.
17                           Weil Gotshal & Manges
                             767 Fifth Avenue
18                           New York, New York 10153

19

20

21   Court Transcriber:      SHARI RIEMER, CET-805
                             TypeWrite Word Processing Service
22                           211 N. Milton Road
                             Saratoga Springs, New York 12866
23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1           THE COURT:  .... name for the record.

2           MR. GILMAN:  For plaintiff and the trustee and UMB

3  Bank as trustee, Charles Gilman from Cahill Gordon & Reindel.

4           MR. WEISS:  For plaintiff also from Cahill Gordon &

5  Reindel, Michael B. Weiss.

6           MR. NEUWIRTH:  Good morning, Your Honor.  For

7  defendant Sanofi, John Neuwirth from Weil Gotshal & Manges.

8           MS. VENEZIA:  Also for defendants Stefania Venezia

9  from Weil.

10          THE COURT:  Thank you for being here.  You may be

11 seated.  We are here in the case of UMB Bank, N.A. v. Sanofi,

12 15-CV-8725.

13          I want to make sure we're all on the same page about

14 today.  First of all, you may be aware that Judge Francis

15 retired recently and after a very long distinguished career

16 and I have stepped into his place for some of his cases,

17 including this one.

18          So I've had the benefit of several communications

19 from you as well as some briefing which I've read and I want

20 to make sure we're on the same page about what we're

21 discussing today and obviously if I don't hit everything you

22 want to talk about we can add in further issues.

23          But the three things I have noted are the joint

24 request to amend the scheduling order.  Second, the trustee's

25 motion to compel production of certain documents which has

3

1    been fully briefed; and third, the trustee's motion to compel

2    and defendant Sanofi's motion to quash certain non party

3    subpoenas for which I received assorted letters, and I would

4    like to ask the parties if they are satisfied that the court

5    can make a ruling on that issue based on what's been submitted

6    along with any argument I hear today.

7            So first, let me just ask that question before we

8    get on to the full agenda.

9            MR. GILMAN:  Your Honor, I think you misspoke

10   certainly on the last point.  It is the trustee's motion to

11   quash --

12           THE COURT:  Yes, correct.

13           MR. GILMAN:  -- for protection against 26 non party

14   subpoenas issued by the defendant Sanofi.

15           With respect to three items, Your Honor, we are of

16   course jointly prepared to speak to the case management order.

17   We jointly submitted it for the court's review and approval.

18           Second, we had in fact fully briefed the trustee's

19   motion to compel a discrete collection of core business

20   records.  We refer to them as the post July 2016 documents.

21   Both sides have completely briefed that.  We are prepared to

22   argue it or submit on the papers as the court would wish.

23           On the third matter, the 26 subpoenas, as reflected

24   in my letter which was in response to Mr. Neuwirth's, the

25   proposal -- and it appears on the third to the last paragraph

4

1    on Page 3 of his letter, was new and it was not communicated
2    at any time during the meet and confer.  We have not had an
3    opportunity to confer with all 26 holders on that proposal.
4    We would be prepared to do so but if Mr. Neuwirth as he says
5    in his letter has declared an impasse we are equally satisfied
6    in simply resting on the papers that were submitted to Judge
7    Francis.  We submitted a letter brief pursuant to his
8    chamber's rules.  Mr. Neuwirth responded.  We replied.  All of
9    those ECF citations are reflected in my letter to Your Honor
10   of Monday I think it was, or Tuesday.  But we can rest on the
11   papers on that as well if you wish.

12            THE COURT:  I've read all those by the way.  I have
13   read most of the record that pertains to the issues today
14   including previous rulings by Judge Francis.

15            We're skipping ahead just a little bit but on this
16   issue of the subpoenas one of my questions was going to be
17   whether counsel thinks there's still an impasse in light of
18   the letter that was received recently suggesting that there
19   had not been a full meet and confer.

20            MR. NEUWIRTH:  Your Honor, thank you for that
21   question.  If what counsel was saying is that it is willing to
22   seriously consider -- and we can get into the back and forth
23   on whether we were at an impasse or not.  I'm not sure that's
24   the best way to spend our time right now but if what counsel
25   is saying is that it will seriously consider the proposal that

5

1   is in the third to last paragraph of my letter of Monday

2   perhaps we don't need to waste the court's time and perhaps we

3   should go forth and have that discussion and hopefully make

4   some progress -- make some progress.

5          So we're happy to do that if counsel wants to do

6   that in good faith and hopefully we'll make progress.  If not,

7   we too are prepared to talk about the issues today and submit

8   on the papers that have already been submitted to the court.

9          THE COURT:  Mr. Gilman, is plaintiff prepared to

10  have those discussions in good faith based on that proposal?

11         MR. GILMAN:  Your Honor, on behalf of myself and on

12  behalf of my law firm we receive all requests in good faith

13  and any time an adversary proposes something which is a

14  compromise of a disputed position we will discuss it with our

15  clients.  We don't need to question whether I would do that or

16  my firm would do that.  Of course we will do that.

17         I'm not sure that that's going to get us where we

18  need to be but as I've said I haven't had the time to talk

19  with 26 holders.  In the interim I will do so.  I will report

20  back to Mr. Neuwirth.  We can jointly report back to the court

21  as to whether or not, Your Honor, we need judicial

22  intervention and if we do I gather that we're prepared to

23  submit on the papers, on the letter briefs that were submitted

24  to Magistrate Judge Francis.

25         THE COURT:  In terms of talking to 26 holders my

1   understanding is there are two different counsel representing

2   23 of those holders.  So you only need to --

3          MR. GILMAN:  And there's the third count.  So all 26

4   are represented and by that I mean, Your Honor, I have to

5   speak with the people.  I have to speak with the 26.  I'm not

6   going to be communicating directly with them.  They have their

7   own counsel.  Their own counsel was on the meet and confer

8   calls that Mr. Neuwirth was not on and we're prepared to

9   pursue those discussions.

10          THE COURT:  I just don't want to have a situation

11  where there's the suggested numerosity of the subpoena parties

12  somehow is going to make this drag out even further.  My sense

13  is that they are all aligned and also aligned with UMB in

14  terms of their positions.  So that it --

15          MR. GILMAN:  Their positions are very, very clear.

16  They joined in all the papers before Magistrate Judge Francis.

17  We cite the ECF filings made on behalf of them directly by

18  their own counsel.  I have cautioned that I'm not sure we're

19  going to get there because I don't know the next proposal will

20  be acceptable but I'm not in the position of rejecting things

21  before I discuss them with the relevant parties.  I have to

22  discuss it with the trustee and the counsel would have to

23  discuss it with the 26 holders and get back to me.  I think

24  it's a matter of days or hours.  It's not a matter of weeks.

25  We're the ones who are trying to move this forward, this

7

1   entire case forward.

2          THE COURT:  Why don't we set a one week period for

3   general man -- and any other relevant counsel and parties to

4   discuss and see if you can come to a resolution.  If you do

5   great, please let us know.  And if you don't let us know that

6   as well and --

7          MR. GILMAN:  We'll jointly report to the court as it

8   happens --

9          THE COURT:  So one week from today is the 23rd.

10  That's the day after Thanksgiving or is that Thanksgiving?

11         MR. GILMAN:  Why don't we do it six days, not seven.

12         THE COURT:  Perfect.  Great.  The 22nd.

13         MR. NEUWIRTH:  Your Honor, is it your thought that

14  if we do reach another impasse that we would have an

15  opportunity to have argument or would you just take this issue

16  on the papers at that point?

17         THE COURT:  I have enough to go on papers but I do

18  have a few questions related to it.  So I might have you back

19  to ask some of those questions.

20         MR. NEUWIRTH:  Okay.  We might welcome that, Your

21  Honor.

22         THE COURT:  So we're going to discuss two issues

23  today then I think.  Scheduling order, gentlemen.  Five months

24  of additional discovery, 4.5 months.  It looks like overall

25  until the end.  Do I have that right approximately?

8

1          MR. GILMAN:  It's their request for the extension,

2     Your Honor, not mine.

3          THE COURT:  My mistake.  I thought it was joint.

4          MR. GILMAN:  Well, no, it's a joint submission but

5     they're the ones who have asked for time and we said if you

6     have to have it, if you need it, we really don't want to give

7     it to you but -- and we're trying to be cooperative.  They

8     asked for more time than this and we ended up with a joint

9     submission that Your Honor has before you but we think this

10    case is taking a long time.

11         THE COURT:  So are you indifferent to whether

12    there's an extension of a period less than five months or more

13    than five months?

14         MR. GILMAN:  I am indifferent as to whether it's

15    less.  I object to it being more.

16         THE COURT:  Okay.  Then, Mr. Neuwirth, please tell

17    me why we need so much additional time.

18         MR. NEUWIRTH:  Well, Your Honor, a lot of this is in

19    the papers and I know you've seen some of it in the background

20    of this case.  This is an enormous case.  Thankfully we have

21    not been before the court on discovery disputes I think before

22    the one that we're about to talk about today and I think

23    that's attributed to the parties working together.

24         There's a lot of who shot who as to why this case

25    has taken some time.  I'm not going to get into too much of

1   that because I don't think it's particularly relevant in the

2   fact of a joint scheduling order that we've proposed to the

3   court but Your Honor has asked so let me give you a little

4   bit.

5           The complaint here has been amended several times.

6   Most recently at the end of August of this year there was a

7   new claim added for breach of our efforts to obtain what's

8   called the production milestone.  That claim literally was

9   just filed two months ago.  The parties have been negotiating

10  the scope of appropriate discovery on that claim even before

11  it was filed but certainly since and there is going to be a

12  significant discovery volume attendant to that claim.  That's

13  one reason why we need more time.

14          In addition, Your Honor, the claims that pre-exist

15  span an enormous amount of time, five years at a minimum on

16  most of them, and the amount of documents that we have had to

17  collect, search and produce is enormous.  We have produced

18  over 17 million pages of documents so far in this case.  Over

19  700,000 documents.  The parties as we sit here today have

20  agreed on approximately 70 custodians whose files need to be

21  searched.

22          So not only do we have discovery with respect to the

23  new claim, the production milestone claim that we are just

24  beginning for all intents and purposes but there is a

25  significant amount of documents that remain to be produced on

1   claims that pre-existed.  Specifically, Count 2 of the

2   complaint which is for breach of our efforts to reach product

3   sales milestone number one.

4           The document production with respect to the approval

5   milestone, Your Honor, which is Count 1 of the complaint,

6   that's been substantially completed.  So really as to Count 2

7   discovery that requires the extension as well as the new

8   claim, the production milestone claim.

9           On top of that, Your Honor, and this is the stuff I

10  really would prefer not to get into but we can because again

11  we have a jointly agreed scheduling order here, plaintiffs

12  have been very, very aggressive and I understand that, about

13  pushing for as much discovery as possible.  They have sent 40

14  letters perhaps to us pushing and pushing and pushing on more

15  and more and more.  So a lot of this delay we respectfully

16  submit is of their own doing.

17          I hope that answers Your Honor's question at least a

18  bit.

19          THE COURT:  I agree with you.  I don't want to get

20  into he said/she said and I'm not at the moment worried about

21  who caused what.  I did want some understanding of what the

22  history has been in terms of the discovery that has taken

23  place.  It does concern me that there have been millions and

24  millions of pages of documents produced in any case.  There

25  will never be millions and millions of pages used in trial.

1  Of course it's always difficult to sift through and figure out

2  what those are.

3         I would encourage the parties certainly to really

4  try to focus on what's important and to streamline as much as

5  possible.  I'm really not one who likes to extend schedules.

6  I can say that in my past career I have asked for those and

7  for similar reasons.  So I understand why the parties are

8  asking what they are asking but I'd like to try to keep a

9  little bit of a tighter reign on it.

10         We extended by three months for -- 4.5 -- if we

11  extended that to three, could you make it work?

12         MR. NEUWIRTH:  The answer is no, we can't.

13  Plaintiffs know that.

14         THE COURT:  Why not?

15         MR. NEUWIRTH:  Because there's just too much that

16  remains to be done.  It just can't be done and we will be back

17  in front of the court asking for more time and the court may

18  say no but we're just not in a position to get it done in that

19  amount of time particularly given the new claim.

20         But there's also an enormous amount left on Count 2.

21  This is not an effort to delay, Your Honor.  The burden here

22  on us from the standpoint of what we are searching for, what

23  we have to produce -- this is a global company with operations

24  all over the world with documents relevant to this case all

25  over the place.  Plaintiffs want them all.  It takes an

1  enormous amount of time.

2        Again, a lot of this I respectfully submit is of

3  their own making.  They have pushed and pushed and pushed and

4  requested a ton of information and we are doing our best to

5  provide all of that and I think we've done because we have not

6  been in front of the court other than on the motion that we're

7  about to talk about with respect to any real disputes.  So

8  we've agreed to give them what they have asked for.  It takes

9  time.  We need that time.  I know we do just based on the

10  history of the case.

11        THE COURT:  Can you be a little more specific about

12  what that time is devoted to?  Is it devoted to figuring out

13  electronic systems?  Presumably you've already done that.  Is

14  it talking to certain people?  Is it getting the documents

15  spit out of a database?  What is it?

16        MR. NEUWIRTH:  Well, Ms. Venezia could probably

17  speak in a little more detail on these issues than I can but

18  let me take a stab at it.

19        It's all of those things.  We obviously do have our

20  hands around a lot of the databases but there are continual

21  requests for us to get our hands around even more.  This is an

22  enormous operation that Sanofi runs and so we've had letters

23  as recently as days ago asking us to look at additional

24  databases.  It's additional custodian requests.  There was a

25  new custodian request last night that we got.  So it's all of

13

1   those things.  Then of course it's the gathering, review and

2   production of those documents as quickly as possible.

3         Our request for five months and counsel knows this,

4   we believe that is a stretch.  I understand Your Honor is

5   saying you don't like to extend schedules but as part of our

6   negotiations we said to them five months is going to be

7   incredibly difficult but we will agree to it to try to get to

8   an agreed upon schedule.

9         So this is not sort of puffery or me trying to get

10  more than I think we really need.  This is what we need and

11  that's going to be difficult.

12        MR. GILMAN:  Your Honor, if I might --

13        THE COURT:  Yes.  Sure.

14        MR. GILMAN:  -- correct the record.  The newly added

15  claim, the production milestone claim which in fact was filed

16  at the end of August of this year was provided to them back in

17  March with our discovery requests and it was at that time that

18  we spoke with Judge Daniels about it and Judge Daniels said do

19  it in the form of an amended complaint.  They've had that

20  complaint.  They've had our discovery requests since March.

21  It is a fact that it was filed on the docket in August but

22  they have been working since March.

23        Number two, the tonnage of documents to which they

24  refer are largely in bulk.  The disassembly of their e-filing

25  with the FDA.  They have turned one e-filing into millions of

1  documents in order to be able to say to the court they have

2  produced millions of documents.  They had to do it twice

3  because the first time they gave it to us it wasn't navigable

4  just like it wasn't navigable the first time they gave it to

5  the FDA and resulted in a rejection.  They made what appears

6  to be a comparable error in their production to us.

7          Your Honor, this is in fact a joint request because

8  we got them to agree to what we got them to agree to but the

9  reason this case is taking as long as it has is because

10  they've had to do almost everything twice.  They gave us a

11  privilege log withholding thousands of documents.  They do not

12  comply with the local rules of this court.  It does not comply

13  with the custom and practice in this district.  We had to

14  write them letters on that.  They then went back and did it

15  again.  That put us months behind the eight ball on the

16  thousands of documents they're withholding.

17          We have then gone back to them and highlighted their

18  privilege log.  There are over 700 documents withheld solely

19  on grounds of attorney-client privilege that were offered or

20  sent to non client, non lawyer third parties.  They do not

21  invoke common interest doctrine.  It cannot be invoked under

22  New York Sanback [Ph.] decision by the Court of Appeals

23  because they're not documents prepared in anticipation of

24  litigation.  There's no work product claim made with respect

25  to any of this but they refused to produce them.

1          We have incipient discovery disputes but they had to

2    make their productions twice, they had to give us privilege

3    logs twice.  What they're doing, they're doing incorrectly the

4    first time.  Months go by before we get to where they should

5    have been on day one.  Yes, they're agreeing to do things but

6    agreeing and doing them are two entirely different things and

7    we're not getting on a timely basis that which they have

8    agreed to provide.  We're getting it but we're getting it

9    after letters and more letters and more reminders.  Yes, we

10   have written more letters in this case than in my experience

11   generally occurs.  But in this case we've had less cooperation

12   than my experience generally occurs.

13          THE COURT:  Mr. Neuwirth, I'm sure you have a very

14   different view of the past.  I don't think you need to counter

15   what has been said and I'm not going into those issues right

16   now.

17          I do have one fact question though and I had already

18   been wondering the same thing because I did understand that a

19   substantial portion of production were FDA filings.  Outside

20   of the FDA filings, MDA and whatever else goes along with it,

21   how many documents have been produced putting all the FDA

22   filings aside?

23          MS. VENEZIA:  We've produced seven to eight million

24   pages at least that are completely non FDA files, Your Honor,

25   and with respect to the FDA files notwithstanding their

16

continued representations that the ten million pages were
useless and garbage, there is substantive information in those
ten million pages.  Millions of pages of worth -- of
information in that ten million that is not garbage.  That is
actually official FDA correspondence.  It just happens to not
purportedly be in the order in which they would like it.  It
is not like you can take the ten million and just toss it out
the door respectfully, Your Honor.

THE COURT:  Again, we're not going to -- we're not
going to get into that.  I just want to know the number and I
think I have an idea of that.

I've heard enough.  I'll give you the time.  I don't
-- hopefully won't be asked to do more with respect to that.
I am concerned that given the size of the case and the scope
of what you are dealing with that the time frames you've put
together for the end are ones that will be tight and very
tight related to expert discovery in particular.  But this is
the schedule you've put forth.  I would like to hold you to it
and I will go ahead and approve the proposed schedule and I
will issue an order on that accordingly.

On the motion to compel with respect to the
documents, I have a few questions but before I ask those is
there anything either of you wanted to say in addition to the
papers that you've submitted which I think I understand?

MR. GILMAN:  Not on behalf of plaintiff, Your Honor.

1          MR. NEUWIRTH:  No, Your Honor.

2          THE COURT:  Let me go ahead with my questions then.

3  For UMB, to what extent do the documents that you're

4  seeking -- well what would you say as to why they're not

5  duplicative of what you already have for what happened up

6  through July 2016?

7          MR. GILMAN:  Well, because by definition they're

8  dealing with the subsequent time frame and in several respects

9  are directly relevant and they are not duplicative of what we

10  already have.

11          First, they will explain the resources, the efforts

12  that Sanofi took after expiration of the time to meet

13  milestones that resulted in substantial increased sales in one

14  [inaudible].  After the due date passed they've ramped up

15  sales.  They've done that in some fashion.  Because they've

16  done it by definition they likely could have done it early and

17  we'd like to understand why it wasn't done earlier, number

18  one.

19          Number two, these documents not only speak to their

20  contemporaneous presence as to what resources and plans there

21  are and speak to the future as to what they're going to be

22  doing, they also are retrospective in analyzing the

23  [inaudible].  So this next period of time we will expect to

24  see in these documents as we saw in the earlier documents a

25  [inaudible] on what they did, how it worked, how they might

1  have done it better, what they might have done differently.

2  That's relevant to whether or not they have taken "diligent

3  efforts to achieve."  That's the burden of the contract,

4  diligent efforts to achieve the milestone.

5  THE COURT:  I understand that argument.  I believe

6  you've identified 13 types of documents, what you call the

7  core documents.

8  MR. GILMAN:  Yes.

9  THE COURT:  One question I have is how do you know

10  all of those 13 types of documents contain the type of

11  information that you're looking for?

12  MR. GILMAN:  Because we have them already for the

13  prior periods.  These are regularly prepared.  Every quarter

14  or every year they prepare these and we have prior iterations

15  so we know what they look like, we know what they're called,

16  we know what they typically show.  We can project what they're

17  going to say in the next iteration.  They're going to talk

18  about what's gone on, what their plans for the future are,

19  what they did in the past, it didn't work, it did work, what

20  they might do differently.

21  All we're asking for is the next generation of

22  documents that they produced to us without objection.  They

23  are four relevant documents.  There is no burden raised and

24  the only objection raised is that counsel agreed to a

25  discovery cutoff of July 2016 and the fact is that there was

19

1   an interim agreement and the fact is within weeks of their

2   initial productions of documents we said we needed this

3   additional information.

4       THE COURT:  But among the 13 documents some of them

5   by name seem sort of self evident to me as to what date might

6   contain the very high level.  So are sort of opaque, F-1, F-2,

7   F-3 for example, and one question I have related to what I

8   just asked is to what degree are these documents duplicative

9   among themselves because they contain the same information

10  about what the sales have been during this time period, about

11  the efforts that were made in the subsequent time period, et

12  cetera.

13      MR. GILMAN:  I'm not being clear.  They will contain

14  information about what the efforts are in this post July 2016

15  period and my question is if those efforts were not done

16  earlier why.

17      THE COURT:  No, I understand the argument but again

18  I'm just trying to understand if the documents that are being

19  sought themselves are duplicative as to that.  Like is there

20  one document, like a retrospective -- a business plan that

21  sets out what was done last year and what we're doing next

22  year, in the next five years and why wouldn't that be enough.

23  Why would you need the others?

24      MR. GILMAN:  Your Honor, if there is one or a few of

25  those documents which tell the entire story they don't have to

20

1   produce redundant information but we have seen in each of

2   these documents something that has been helpful to us and

3   clearly relevant to the claims and defenses in the case.

4          THE COURT:  But among those that you've seen that

5   are relevant, are they duplicative among themselves?

6          MR. GILMAN:  No.  Your Honor, I can't represent that

7   they're entirely separate.

8          THE COURT:  Sure.

9          MR. GILMAN:  But for the most part they are not

10  duplicative because they address these time frames in

11  subsequent ways.  One will be dealing with a budget.  One will

12  be dealing with a marketing plan within budgeted allowances.

13  One will be dealing with something else, sales force, and some

14  of them pull it together, some of them were very different and

15  we need to have them all.  But it's a very small collection of

16  documents.  It's not a search and you shall find.  They know

17  the cabinets that these things are in because they produced

18  last year's versions.

19         THE COURT:  One more question for you which is how

20  long is the period to meet the first milestone from -- what

21  length of time?

22         MR. GILMAN:  The first milestone was March 31, 2014

23  and, Your Honor, there is an issue with respect to that -- the

24  calculation period which runs from something called produced

25  launch or is it formed by product --

1          THE COURT:  Regardless of what product launch

2 date --

3          MR. GILMAN:  We have a dispute about that.

4          THE COURT:  I understand but regardless of when the

5 product launch date is what is the subsequent period of time

6 that the first milestone is supposed to be met?

7          MR. GILMAN:  The definition of product launch

8 affects --

9          MR. NEUWIRTH:  When the end date is, Your Honor.

10          MR. GILMAN:  -- when the end date is.  That's the

11 whole problem with the dispute because it moves the end date

12 out [inaudible].

13          THE COURT:  Exactly.  So my question is what period

14 of time is that from the launch to the end date for the

15 milestone.  Is it two years, is it one year, is it five years?

16          MR. GILMAN:  Mr. Weiss will address this.

17          MR. WEISS:  Thank you, Your Honor.  So the CVR

18 agreement has complex provisions in it.  The best way to

19 describe it is that there's a trigger date for product launch

20 which sets up a sales measuring period.  So as you move

21 product launch date out further the dates upon which other

22 launches are counted towards the end date are measured in a

23 longer period of time.

24          To the extent there was agreement on the July 2016

25 product launch date subsequently that's in dispute.  If in

1  fact the plaintiff's theory of product launch --

2          MR. NEUWIRTH:  I think you meant -- I don't mean to

3  interrupt but I think you meant 14, Michael on product launch.

4          MS. VENEZIA:  On product launch.

5          MR. WEISS:  For product --

6          MR. NEUWIRTH:  Just so you're clear, Your Honor.

7          MR. WEISS:  Except that would push the end date out

8  potentially into the end of 2016.

9          THE COURT:  So it could be a period of over two

10 years.

11         MR. WEISS:  Yes.

12         THE COURT:  Thank you.  That helps.

13         Mr. Neuwirth, is there anything -- I do have some --

14 I have a question or two for you possibly but do you have

15 anything you want to respond to?

16         MR. NEUWIRTH:  Well, sure, Your Honor.  I'll try to

17 be brief about it.  Your Honor asked -- I think your first

18 question to counsel was is any of this duplicative and

19 obviously the argument that they've said that they would like

20 to make with the benefit of this discovery is that Sanofi

21 somehow ramped up its efforts after a [inaudible] time period

22 for product sales.  Milestone came and went and used more

23 diligent efforts during that period than it did in the prior

24 period once the milestone had passed.

25         THE COURT:  It seems like a logical argument.

1          MR. NEUWIRTH:  We understand the argument, Your

2     Honor.  But in order to -- the basis for that argument is

3     really based on documents that they already have in our view.

4     They point to in support of this very argument the increase in

5     Lumtratta [Ph.] sales between the second quarter of 2015 and

6     the second quarter of 2016.  That entire time period, Your

7     Honor, predates the current cutoff which is July 29, 2016.  In

8     fact, there's 30 days in addition in the current cutoff of

9     cushion for plaintiffs.  So they have those documents.  It's

10    upon that basis that they are making the argument that they're

11    making which is that sales increased and that must mean that

12    Sanofi devoted different efforts in the post product sales

13    milestone one period than it did before.

14         THE COURT:  Right.  Again, it seems like a logical

15    argument but if the -- let's say the launch period were as

16    long as two and a half years, wouldn't it make sense that one

17    would want to look at at least two and a half years of efforts

18    made after July 2016 in order to compare what efforts were

19    made during that time frame?

20         MR. NEUWIRTH:  We understand that argument as well,

21    Your Honor, and I think there are two answers to it.  One is,

22    just to be clear, in order to determine this issue of the

23    disputed measuring period they have or will have all of the

24    documents putting aside this dispute, all of the documents

25    that they need in order to make that argument and I don't even

24

1  think they're saying that that they need to extend the period

2  beyond the already agreed upon cutoff in order to make that

3  argument.

4        THE COURT:  I'm not addressing that particular

5  argument.

6        MR. NEUWIRTH:  Okay.  Then the question becomes

7  let's assume that they want to investigate or explore this

8  longer period because they think that some day they may be

9  able to establish that in fact that's the right period, what

10 documents do they need in order to do that.

11       We had discussions, Your Honor, where there was a

12 group of documents, and you can see this in our papers, a

13 category of documents with marketing information, sales

14 information, et cetera that would have covered and that we

15 were willing to provide would have covered the period out

16 until the end of December 2016.

17       Where things broke down, and I think that's where

18 the core of this dispute really lies, is over long range

19 projections, forecasts and things of that nature.  That's what

20 we thought was not relevant to what they want to do which is

21 to essentially explore our efforts during what I'll call this

22 stub period, the end of July 2016 to the end of December 2016.

23       THE COURT:  I saw that in your papers but even a

24 projection could be based on making a certain degree of

25 efforts.  You're going to project that you're going to double

1    your sales because you're going to double your efforts.  Why

2    wouldn't it be legitimate to or relevant to understand why

3    more efforts are being made in that period?

4          MR. NEUWIRTH:  I guess you can stretch any argument,

5    Your Honor, and make -- try to make an argument with respect

6    to relevance.  We think the most relevant documents, and these

7    were the documents that we were willing to provide, are the

8    marketing sales resource type documents that they had

9    requested and that's a different category.  Those I understand

10   if they were to have that information [inaudible] could be

11   used to make an argument that there are different resources

12   being devoted to efforts in the post period as opposed to the

13   pre period.

14         Projections and forecasts though, and I understand

15   what Your Honor is saying, I think is a different animal and

16   much less relevant.  That's really where we drew the line,

17   Your Honor.  There was a group which we're still going to

18   provide of marketing and sales documents that the plaintiffs

19   had asked for but when it comes to forecasts and budgets which

20   are by their nature speculative that we think, Your Honor, is

21   just a step too far.

22         This really goes back to when does the request for

23   more discovery end.  Obviously Your Honor knows that there was

24   an agreed upon deadline for the cutoff of discovery in this

25   case of July 29, 2016.  That was a deadline.  Plaintiffs now

1    want to move it.  These are -- this is one of the reasons, one

2    of the many reasons by the way why things have taken a long

3    time in the case.  There have been changes in theories and

4    requests for additional documents and accommodations made and

5    unfortunately we're here on this dispute.  But at some point

6    there has to be an end and there was a cutoff here.

7            We tried to compromise with them to provide the

8    documents that we thought were most relevant with respect to

9    the argument that they want to make with respect to this

10   disputed stub period.  We think the budgets is just a step too

11   far in that regard.

12           THE COURT:  It doesn't sound like you're arguing

13   burden at least on these 13 specific documents, are you?

14           MR. NEUWIRTH:  You know, Your Honor, Ms. Venezia

15   will tell me that there really is a burden.

16           THE COURT:  I'm sure every other additional document

17   is a burden.

18           MR. NEUWIRTH:  The answer is what they've asked for

19   is core and regularly created documents.  In a company like

20   Sanofi what --

21           THE COURT:  Let me pause there.  I'm not addressing

22   the any other.  I'm asking the 13 specified.

23           MR. NEUWIRTH:  Right.  I think I understand the

24   question.  But with -- when you say you're not addressing any

25   other --

1          THE COURT:  Well, the idea is as -- I break down the

2   request as to 13 specific documents that were identified and

3   then any other so-called core documents.  If you just looked

4   at the 13 --

5          MR. NEUWIRTH:  Yes.

6          THE COURT:  -- is that a burden to get those?

7          MR. NEUWIRTH:  I think the answer with respect to

8   the 13 is that because of the global nature of the operations

9   the answer is it is certainly a burden.  There's not a file

10  cabinet where they all get pulled out of, correct me if I'm

11  wrong, but I think the opposite is true.  So there is burden.

12  There's no question about that.  And that's why in our

13  negotiations with counsel we were trying to come up with a

14  limited pool of documents that we thought would aid them in

15  exploring the argument that they want to make but does limit

16  the burden on us.  So there is burden, Your Honor.  It's not a

17  matter of just pulling open a drawer and giving them

18  everything.

19         MR. GILMAN:  Your Honor --

20         THE COURT:  Wait, wait, wait.

21         MR. GILMAN:  I'm sorry.

22         THE COURT:  I just want to make sure that I didn't

23  have another question for counsel which was going through my

24  mind at the moment.  Give me a second.

25                    [Pause in proceedings.]

1           THE COURT:  Oh.  Is there a protective order in this
2   case?
3           MR. NEUWIRTH:  A confidentiality order yes, there
4   is.
5           THE COURT:  I would think so.  And how many tiers is
6   it?
7           MS. VENEZIA:  Two tiers, Your Honor.
8           THE COURT:  So it has a -- so I assume that one of
9   those tiers is to -- is attorney's eyes only, would that be
10  correct?
11          MS. VENEZIA:  The equivalent.  Highly confidential.
12          THE COURT:  Is that --
13          MS. VENEZIA:  Similar to attorney's eyes only.
14          THE COURT:  Does that include in-house counsel or
15  outside counsel only?
16          MS. VENEZIA:  Also includes in-house counsel.  I
17  believe that is correct.
18          THE COURT:  Sir, you wish to address.
19          MR. GILMAN:  Budgets by definition are a statement
20  of intended effort, diligent efforts is informed by Sanofi's
21  statements of what efforts they intend to make, number one.
22          Number two, forecasts are not in my experience in
23  the case of SEC registrants and sophisticated companies --
24  we're dealing here with one of the world's largest [inaudible]
25  companies done by the seat of their pants.  There are bases

1    and reasons and [inaudible] that go into forecasts.  We're not

2    asking for all the underlying information but I don't -- I

3    don't take it that forecasts are meaningless because they're

4    just forecasts.  We think budgets and forecasts are directly

5    relevant.

6            With respect to burden, these are all electronic

7    documents.  They can find them very, very quickly.

8            THE COURT:  Are they -- let me ask you are they --

9            MR. GILMAN:  They produced them in electronic form

10   earlier.

11           THE COURT:  But are they single documents for all of

12   Sanofi or are they documents that are created by each

13   individual unit in each country?  What's -- when I say 13

14   documents I'm thinking literally 13 documents.  To what extent

15   is it beyond that?

16           MR. GILMAN:  They are --

17           MS. VENEZIA:  Your Honor --

18           MR. GILMAN:  They are [inaudible] Sanofi only.

19   We're not dealing with around the [inaudible] offices but

20   they're [inaudible].  We're talking about the comparable

21   documents.

22           THE COURT:  Let me ask defendants that question.

23           MS. VENEZIA:  There are top level documents at the

24   end of the day.  They are -- the process begins unit by unit

25   across the globe within different countries and within

1    different units and then they ultimately get consolidated up

2    and there's a process for which that occurs.

3            MR. NEUWIRTH:  Your Honor, there's one additional

4    issue if we're focusing on the projections and the budgets

5    that I think plaintiff request runs smack into, and that's the

6    prior rulings in this case.  The time period that plaintiffs

7    are seeking the production of documents for is a time period

8    which gets into additional product sales milestones that are

9    set forth in the CBR agreement and Your Honor probably saw

10   some of this in the letters and correspondence.  Those are

11   product sales milestones 2, 3 and 4.

12           There was a motion to dismiss at the beginning of

13   this case where Judge Daniels made it clear that there are no

14   claims with respect to 2, 3 and 4 in this case and as we have

15   set forth in our papers there have been several efforts since

16   that motion to dismiss ruling to resubmit -- reinsert 2, 3 and

17   4 issues into the case notwithstanding that motion to dismiss

18   ruling.

19           I understand counsel's argument that they are

20   seeking this information in order to try to compare our

21   efforts from one period to another but the fact remains that

22   the discovery they are seeking deals with a time period that

23   at least with respect to claims 2, 3 and 4 Judge Daniels has

24   said is off limits.

25           We tried to compromise with them given our concern

1  about that issue by offering them a set of documents that we

2  thought would be sufficient for them to make the argument that

3  they want to make.  That obviously didn't work and that's why

4  I think we're arguing at the end of the day about budgets,

5  forecasts, et cetera, but those type of documents are directly

6  relevant to the issue of whether product sales milestones 2, 3

7  and 4 will be made and those issues are not issues in this

8  case pursuant to Judge Daniels prior rulings.

9         MR. GILMAN:  Your Honor, Judge Daniels spoke

10  directly to this issue at Page 30 of the August 17, 2016

11  transcript at ECF 77.  It's quoted in Footnote No. 2 of our

12  reply brief on this motion.

13         The fact, the fact that a document may be relevant

14  to Count 2 which is live and in this case and also relevant to

15  claims which the judge dismissed without prejudice as

16  premature doesn't mean that we can't get the document for

17  Count 2.

18         MR. NEUWIRTH:  Your Honor, the question is -- the

19  question --

20         THE COURT:  Let's make these final comments, please.

21         MR. NEUWIRTH:  Yes, sure.  We're well aware of Judge

22  Daniels comment with respect to what discovery may be

23  appropriate and the question is what discovery may be

24  appropriate and what's the limit to it.  We think we came up

25  with a core set of documents as I have said that would have

1  satisfied their desire to make the comparison argument they

2  want to make.  We think the budget forecast arguments go too

3  far and weigh too far into the issues that are not issues in

4  this case.

5          THE COURT:  All right.  I think I have enough to

6  make a ruling.  Let me take a minute chambers.  I'll be back

7  in chambers and I will come out in two minutes.

8          THE CLERK:  All rise.

9                    [Off the record.]

10          THE COURT:  You may be seated.  I am prepared to

11  rule on this particular motion.  UMB is a trustee of parties

12  holding contingent rights in Sanofi's development of the

13  multiple sclerosis drug.  UMB asserts breach of contract with

14  Sanofi based on Sanofi's alleged failure to use diligent

15  efforts to meet sales milestone targets for the drug that

16  would trigger substantial payments if those milestones were

17  met.  Sanofi has not asserted any counterclaims but has

18  alleged various defenses.

19          The issue that I am addressing today concerns a

20  motion to compel for production of documents from Sanofi.

21  I've considered all the papers and argument here today.  My

22  ruling will be as follows.

23          The defendant Sanofi will be required to produce 13

24  specifically identified documents in counsel's letter of May

25  3, 2017 for beyond July 2016.  However, they need only produce

1    the versions that are final and which are consolidated.

2            Secondly, they may redact at their choosing

3    projections that go beyond a two and a half year period from

4    June 2016 which means they should not redact information that

5    runs through 2019 but may redact information or projections

6    beyond that point if they feel they think that's desirable or

7    necessary.  The two and a half year period I'm setting

8    corresponds, I understand, to what the outside time frame

9    would be for the first milestone to be met.

10           Let me give you a couple justifications and

11   explanations.  UMB argues that these documents are relevant

12   for the following reasons.  I'm sorry.  Strike that statement.

13   We'll get to that.

14           Under Rule 26 parties may obtain discovery regarding

15   any non privileged matter that is relevant to any party's

16   claim or defense and proportional to the needs of the case.

17   The court agrees with UMB that documents post dating the time

18   period at issue may contain relevant data because they may

19   provide retrospective analysis of earlier efforts and also

20   because efforts taken during subsequent milestone periods can

21   serve as a point of comparison to efforts taken during the

22   first milestone period.  That information is likely to be an

23   important determinant of whether or not Sanofi exercised

24   diligent efforts for the first milestone period.

25           Further, post first milestone information generated

34

1    during 2017 is no less relevant than the same type of

2    information generated for the last half of 2016.  A 2017

3    business analysis likely will address efforts undertaken

4    during 2016 including for the first half of that year.

5             Similarly, efforts undertaken by Sanofi during 2017

6    may well serve as a benchmark against which to measure efforts

7    made during 2016 as an example.  Of course Sanofi is free to

8    counter such arguments with evidence of factors that may

9    explain differences in sales having little or nothing to do

10   with the efforts Sanofi made to promote and sell the drug.

11            Sanofi's end run argument doesn't hold up.  If

12   documents are relevant to claims for the first milestone the

13   fact that they may also be relevant to subsequent milestones

14   does not mean the documents should not be produced even if

15   those claims are not in the case.

16            Accordingly, the court finds that the specific so-

17   called core materials identified in the letter of May 3rd are

18   relevant and proportional to the needs of the case, that means

19   the parties and other factors.  Accordingly, Sanofi is

20   directed to produce the documents as I outlined them at the

21   beginning.

22            At the same time discovery should be proportional

23   and it should not evolve into a fishing expedition.  So I'm

24   denying the motion to compel to the extent it seeks any other

25   regularly created Sanofi core budget marketing and sales

1  documents as generally stated in the motion.  That is the

2  court's ruling.  Thank you.

3          MR. NEUWIRTH:  Your Honor, may I ask one clarifying

4  question?

5          THE COURT:  You may.

6          MR. NEUWIRTH:  With respect to the portion of Your

7  Honor's ruling about redacting projections beyond the two and

8  a half year period if I understood it correctly, I think the

9  thought there was that you wanted to give plaintiffs the

10  ability to get those projections through the duration of the

11  disputed measuring period.  No?

12          THE COURT:  No.  A period of time that will mirror

13  the period of time -- the outside period of time by which the

14  first milestone could be or could or should have been met.  In

15  other words, if it's a one year period from launch to when the

16  first milestone was supposed to be met I'm giving them one

17  year of time beyond that.  Here I understand approximately

18  there was a two and a half year period that would be the

19  outside time period from launch to meeting the first

20  milestone.

21          Accordingly, I am trying to mirror that with the two

22  and a half years on the other side of the first milestone

23  target date.

24          MR. NEUWIRTH:  I think what they're saying, but

25  they'll correct me if I'm wrong, is that the last date by

1  which product sales milestone could have been met may have

2  been the end of December 2016 based on a product launch which

3  they think is in dispute.

4        THE COURT:  But a product launch that is in dispute

5  but which took place as early as what?

6        MS. VENEZIA:  Sanofi's positoin is that product

7  launch occurred on April 1, 2014.  It is my understanding,

8  Your Honor, that plaintiffs posited that product launch could

9  have taken place as early -- I'm sorry, as late as January

10 2015 which is a difference of six months which is why the tail

11 end of product sales measuring period number one, the period

12 that is in dispute we have said the date to meet that was June

13 30, 2016.  Plaintiffs have posited that it could be as late as

14 December 31, 2016.  So that's only a difference at the end of

15 the day of six months on the back end.

16       MR. NEUWIRTH:  So my question --

17       THE COURT:  We're talking over each other or by each

18 other.  What is the longest period of time based on the

19 disputes you're having about launch date, what is the longest

20 period of time that could be between a launch date and meeting

21 the first milestone?

22       MS. VENEZIA:  Approximately -- it's approximately

23 two years, Your Honor.

24       THE COURT:  That's what I thought.  My ruling stands

25 as is.  So ordered.  Thank you.

37

1          MR. NEUWIRTH:  Thank you, Your Honor.

2          MR. GILMAN:  Thank you, Your Honor.

3          THE COURT:  Oh, any -- I didn't say we stand

4    adjourned even though I stood.

5          A couple of things.  First of all, I'd like to set a

6    date for a status report from you jointly so that I can get an

7    idea of how things are moving along.  I'd like to set that for

8    45 days from today.  Obviously if you have any issues you want

9    to bring to the court's attention before then you may.  I hope

10   to hear that things are going swimmingly.

11         Anything else from either side that we need to

12   address?

13         Okay.  Now we stand adjourned.

14                      *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

38

1      I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5  _____

6                                Shari Riemer, CET-805

7  Dated:  November 17, 2017

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25