```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                        Docket #15cv8725
 UMB BANK, NA,                      :

                    Plaintiff,      :

   - against -                      :

 SANOFI,                            : New York, New York
                                      May 14, 2019
                    Defendant.      :

------------------------------------ : DISCOVERY CONFERENCE


                      PROCEEDINGS BEFORE
           THE HONORABLE JUDGE ROBERT W. LEHRBURGER
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          CAHILL GORDON & REINDEL LLP
                        BY:  CHARLES GILMAN, ESQ.
                        80 Pine Street
                        New York, New York 10005

For Defendant:          WEIL GOTSHAL & MANGES LLP
                        BY:  JOHN NEUWIRTH, ESQ.
                        76 Fifth Avenue, 25th Floor
                        New York, New York 10153

For Interested Party:   SEYFARTH SHAW LLP
                        BY:  STEVEN PARADISE
                        620 Eighth Avenue
                        New York, New York 10018-1405


Transcription Service:  Carole Ludwig, Transcription Services
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

```
 1                        PROCEEDINGS                3

 2          THE CLERK:  We're here in the matter of a

 3   discovery conference, 15cv8725, UMB Bank, NA versus

 4   Sanofi.  Attorneys, please state your name for the record.

 5          MR. CHARLES GILMAN:  For plaintiff/trustee,

 6   Charles Gilman, Cahill Gordon & Reindel.

 7          MR. JOHN NEUWIRTH:  Good afternoon, Your Honor,

 8   John Neuwirth from Weil Gotshal for defendant Sanofi.

 9          THE COURT:  Okay, is see we have quite a crew

10   -- oh, sorry.

11          MR. STEVEN PARADISE: I'm Steven Paradise and

12   I'm here on behalf of the nonparty, Stonehill.

13          THE COURT:  Okay, thank you. All right, I see

14   we have quite a crew, I was just contemplating that in

15   retrospect it may have not been necessary to do this

16   in person, but I haven't seen you all in a while so it

17   can't hurt. And the reason we are all together is

18   because of Sanofi's request to be able to depose one

19   of the CRB holders, both the entity and individual,

20   although in the case of the deposition of the entity

21   it may be the same individual.

22          One reason I did want to see you was to ask a

23   question which is, although let me preface it with the

24   reasons you give for taking the deposition are all

25   fine and good, you still don't explain what the
```

PROCEEDINGS                    4

1

2  relevance of what you will be asking is. What is it

3  you want to find out and what will it be relevant to

4  in terms of the issues?

5          MR. NEUWIRTH:  Sure, Your Honor.  Your Honor,

6  as we set forth in our letters, and as we set forth in

7  our letters when we sought the document subpoenas,

8  there is a named plaintiff here, and it's the trustee,

9  but there is no question from the documents that have

10 been produced that there is a group of investors that

11 are funding this litigation and driving this

12 litigation. They are not the named plaintiff, but

13 there is one of them and that's Stonehill, which is

14 clearly the lead investor that if not in name is the

15 plaintiff, is the co-plaintiff. Is standing right next

16 to the plaintiff in this case and is consulting with

17 the trustee, the plaintiff, on all decisions and with

18 respect to the prosecution of this litigation.

19         THE COURT:  Right, presumably the trustee

20 wouldn't be bringing this case if the CRV holders

21 weren't asking for it, so.

22         MR. NEUWIRTH:  That's correct. But there's one

23 plaintiff, in particular, and that's Stonehill. And

24 remember, Your Honor, step back, we initially served

25 subpoenas on 26, I think, of the CV holders. Your

1                            PROCEEDINGS                     5

2   Honor quashed those subpoenas and said if you take, if

3   it turns out later in this case that it becomes

4   necessary to apply to the Court for discovery of any

5   of the CVR holders, you're welcome to come back. Or

6   maybe not welcome, but you can come back and do that.

7           We took the deposition of the trustee, UMB,

8   promptly after taking that deposition we sought leave

9   to serve document subpoenas, not on all 26 CVR

10  holders, but only on Stonehill which was the lead

11  entity.

12          THE COURT:  Right.

13          MR. NEUWIRTH:  And the reason we did that is

14  because this is an unusual case.  Stonehill is driving

15  the litigation process. There is a named plaintiff,

16  yes, that is a trustee, but nothing happens without

17  Stonehill's --

18          THE COURT:  And what's the relevance of that?

19          MR. NEUWIRTH:  Sure.  Well just like a

20  plaintiff, Your Honor, and even though this is a

21  breach in contract case, we would be able to ask any

22  question essentially that we wanted of the named

23  plaintiff in the litigation, and here Stonehill is all

24  but named the plaintiff in the litigation.

25          So, for instance, maybe Stonehill doesn't

1

2  think so much of these claims. If we ask the plaintiff

3  that question in the litigation, sure it would be

4  relevant to know that the plaintiff doesn't think much

5  of the claims that it's bringing. Well what happens if

6  Stonehill, which is the driving force behind this

7  litigation, because we all know it's not the trustee

8  that's the driving force behind the litigation, but

9  Stonehill.  If Stonehill has that type of information,

10  we're entitled to discovery that.

11      Maybe somewhere down the line the trustee will

12  make a motion when we're at trial trying to exclude

13  evidence on the grounds that it's not admissible, but

14  we're certainly entitled, given the unique

15  circumstances of this case, to at least discover that

16  information now.  That's the relevance, Your Honor,

17  and that's one example of relevance.

18      Your Honor has already ruled in the October 18

19  order on issues of proportionality and burden. There

20  is no burden here, Your Honor, and no claim as to

21  burden really has been made by Stonehill, maybe we'll

22  hear something different today.  Stonehill is in New

23  York, we're talking about one deposition, we're in New

24  York, there's plenty of time left within the confines

25  of the schedule, expert discovery currently runs out

| 1 | PROCEEDINGS | 7 |

2  until the end of July, we're talking about scheduling

3  one deposition, fact deposition between now and then.

4       And as for proportionality, we're never going

5  to get to proportionality in this case, as the Court

6  knows. There have been twenty fact depositions of

7  Sanofi, there has been one fact deposition on the

8  other side, we're trying to get a second.

9       THE COURT:  Who did you depose?

10      MR. NEUWIRTH:  Who did we depose?

11      THE COURT:  Yes.

12      MR. NEUWIRTH:  A gentleman named Gavin

13  Wilkinson at UMB, at the trust company, a

14  representative of the trustee.  So all we're asking

15  for is our second and probably final fact deposition.

16  We think that deposition is likely to be of Mr. Stern,

17  we served a 30(B)(6) notice, we think he's the most

18  knowledgeable. The documents suggest that he is.  And

19  that's all that we're asking for. And the reason we're

20  asking for it is in all but name, he is the plaintiff

21  here. And just like we'd be entitled to probe the

22  plaintiff in the litigation, even a breach of contract

23  suit we think we should be entitled to probe the

24  actual plaintiff here.

25      THE COURT:  Okay, thank you.  Mr. Gilman, the

1                              PROCEEDINGS                    8

2  beard becomes you, I almost didn't recognize you at

3  first.

4            MR. GILMAN:  I don't believe that Sanofi could

5  depose even the trustee on things like motive in a

6  breach of contract action. The law of this case is

7  clear, motive is not relevant to the claims asserted.

8  There are no counterclaims in this case. The trustee's

9  conduct is not at issue in this case. Stonehill is not

10  a party to the lawsuit. They were not involved in the

11  negotiation of the CVR agreement for contract at issue

12  in this case.  Their view of that contract is no more

13  relevant than a bystander on the street. It is the

14  parties' view, it is the parties' negotiation, the

15  parties' obligations of performance that are or are

16  not at issue and are or are not relevant.

17            THE COURT:  Well and one party is UMB but

18  who's the party on your side of the ledger?

19            MR. GILMAN:  Well think of this as a class, as

20  it were, you have  plaintiff.

21            THE COURT:  And in class actions named

22  plaintiffs get deposed and sometimes non-named

23  plaintiffs bet deposed.

24            MR. GILMAN:  Only on their own investments in

25  the sense of that kind of a claim where the investment

PROCEEDINGS                                    9

1

2   is the issue, did you rely on the prospectus, didn't

3   you rely on it, that kind of a thing. That's not an

4   issue here.  The only issue in this case is did Sanofi

5   comply with its obligations of diligent efforts or

6   commercially reasonable efforts, depending on the

7   milestone.

8           There are no damages at issue in this case.

9   Counsel says he wants to depose Stonehill on the

10  valuation of the CVRs. Damages are not at issue. If

11  there is a breach proven, and that breach causes a

12  milestone to have been missed, the contract says you

13  get a dollar, or you get two dollars, or you get three

14  dollars per CVR, it's set forth in the contract.

15  Principal amount of damages is set forth to the penny

16  and is not at issue.  Prejudgment interest is set

17  forth, the contract breach rate of interest is set

18  forth. It's prime plus 3 percent.  There are no issues

19  of damages. The only issue is liability, did Sanofi

20  honor its contractual obligations which are mandatory.

21  Sanofi shall use diligent efforts to achieve the

22  approval milestone and the sales milestone, they shall

23  use commercially reasonable efforts to achieve the

24  production milestone. The issue is did they or did

25  they not.  We have a battle of experts.

We're in the middle now of having just received seven expert reports from Sanofi. We're preparing, pursuant to the existing scheduling order, as to which we're not seeking any relief, to take the depositions if there's even experts. Now they lob in, in the middle of this process, a request to take three depositions five months after the close of all fact discovery and they haven't answered Your Honor's question of what's the relevance. I haven't heard counsel say if I ask them X and they said Y I could use that. There is not a single question that I have thought about, the answer to which from a nonparty would relevant to any claim or any defense pled in this action.

What they're trying to do is tar the beneficiaries for whom the action is brought so they can stand up in front of a jury and say they're big, pad hedge funds, they're not mom and pop that used to own Genzyme stock. They're the hedge funds that bought the CVRs from mom and pop. And they're bad people because, and that's what this is all about. And this has nothing, nothing to do with a breach of contract action, it has nothing to do with any claim or defense live and pled in this case.

```
 1                        PROCEEDINGS                    11
 2            I think that we would all like to take a
 3   little more discovery. I'll represent to the Court
 4   there are issues that in planning on summary judgment
 5   and other motions we've thought about, we'd like to
 6   fill in, we'd like to do this --
 7            THE COURT:  Well, of course, but this isn't
 8   something out of the blue, I mean it's something that
 9   had been addressed before and I did leave an out for
10   potentially coming back.
11            MR. GILMAN:  Stonehill has been known to them
12   for over two years.
13            THE COURT:  Sure.
14            MR. GILMAN:  Stonehill as investor, Stonehill
15   as a lead investor, Stonehill every quarter publicly
16   files with the SEC, and I know that counsel tracks it,
17   their investments, including their investments in CVRs
18   at issue in this case. They've known this for two
19   years. They're waiting five months after the close of
20   all fact discovery to take depositions and again, I
21   haven't heard counsel posit a single fact that he
22   thinks he might be able to elicit that would be
23   relevant. What Stonehill thinks about provision X, why
24   it was Z in the contract, is not relevant, they're not
25   a party to the contract.  What Stonehill thinks about
```

PROCEEDINGS                    12

1
2    the value of the CVRs is not relevant because the
3    contract says if there's a breach you get the
4    following to the penny set forth in the contract.
5    Your Honor, there is no relevance.
6              THE COURT:  You mentioned three subpoenas or
7    three separate depositions but I hear from the defense
8    that it's more likely to be one.
9              MR. GILMAN:  I don't know that. Counsel for
10   Stonehill is here.
11             THE COURT:  Okay.
12             MR. GILMAN:  All I know is that there are two
13   separate legal Stonehill entities which each caught a
14   30(B)(6) subpoena, and there is an employee who caught
15   a subpoena. And my understanding is under Rule
16   30(B)(6) the corporation designates its
17   representative, not Mr. Neuwirth.
18             THE COURT:  Right.  No, that's true, but I do
19   want to ask, but I'll allow counsel for Stonehill to
20   address that, and actually I'd like to hear from him,
21   so thank you.
22             MR. PARADISE:  Thank you, Your Honor, again,
23   Steven Paradise of Seyfarth Shaw here on behalf of
24   Stonehill.  Let me first ask that the Court not draw
25   any adverse from where I am sitting, there is simply

1                           PROCEEDINGS                    13

2  no room at the other side's table.

3          Your Honor, I'm going to try not to duplicate

4  anything that Mr. Gilman's said because I would have

5  said many of the same things. But I would put it this

6  way, picking up on what Mr. Neuwirth said in terms of

7  the relevance, and I would like to talk about burden,

8  as well. But the question would be suppose the

9  discovery determines that Stonehill believes this is a

10 great claim and it's the greatest claim ever. And this

11 is a rhetorical question although Mr. Neuwirth is free

12 to answer it, does that mean that Weil Gotshal concede

13 and stipulate to the fact that the claim is a valid

14 claim, of course they would.

15         At the same time, Your Honor, the fact that

16 Stonehill has negative views on the claim, which I

17 don't believe to be the case but I don't know, equally

18 has absolutely zero relevance to the merits of this

19 case, as Mr. Gilman just laid out for you in his

20 argument.

21         And turning to burden, the notion that there

22 is no burden is silly. It's a 30(B)(6) deposition, as

23 Your Honor knows, that requires that we do somewhat of

24 an investigation among other employees. Mr. Stern, I'm

25 not going to deny, is a significant employee in

1                           PROCEEDINGS                      14

2   connection with this investment, but there are other

3   employees involved in this investment. And we would

4   have to interview them, make sure we gather their

5   knowledge to make sure that the witness that we do

6   choose to designate at the appropriate time is able to

7   respond to the seven quite broad topics that are in

8   the notice, Your Honor. I also point out to you,

9   speaking of the topics, they're identical to the seven

10  topics that were in the subpoenas.

11          And Your Honor said that the discovery should

12  be focused and narrow. You're telling me that from the

13  seven broad categories of document requests that they

14  made, and by the way, Your Honor, we tried to

15  negotiate them down in good faith, both sides,

16  ultimately we got, as I joked with Mr. Amsel, I got

17  nothing from him. But we decided to go ahead and

18  produce the documents because we've got nothing to

19  hide and we didn't want to burden the Court and slow

20  the process down, so we ended up producing a lot of

21  documents.

22          But the fact of the matter is, there is a

23  burden in connection with preparing a 30(B)(6)

24  witness. And whether it's Mr. Stern, or it could be

25  more than one witness, as Your Honor knows, but the

1                              PROCEEDINGS                    15

2   more important thing is, and your rules, you know, I

3   read them, Your Honor, and you make it very clear that

4   one of the big issues is the burden or expense of the

5   proposed discovery and whether it outweighs the likely

6   benefit. I've heard no benefit here, whatsoever. At

7   best, it's slight and it's aspirational. I think

8   they're hoping that through a deposition Mr. Stern

9   will say something embarrassing or something he

10  wouldn't have wished to have said and they can somehow

11  use that in the case going forward, similar to what

12  Mr. Gilman just argued. But that benefit, Your Honor,

13  I do not believe comes close to approaching the

14  burden. I'm not saying it's the greatest burden in the

15  world, but there is a burden, and that burden well

16  outweighs any benefit that the plaintiffs will obtain,

17  I'm sorry, the defendants will obtain from these

18  depositions.

19          THE COURT:  Okay, thank you.  Mr. Neuwirth, I

20  know you want to respond, but let me ask a few direct

21  questions. First of all, do you agree or disagree with

22  respect to the damages point? That is that the amount

23  in controversy is essentially set by the contracts and

24  that discovery need not really address the damages

25  issue?

```
 1                         PROCEEDINGS                    16
 2           MR. NEUWIRTH:  Well I don't agree, Your Honor.
 3   I think the point was made that this is all about
 4   liability and not about damages.  Even assuming for
 5   the sake of argument that liability could be
 6   established, in other words, even if it could be
 7   proven that diligent efforts were not used, it still
 8   needs to be proven that with the exercise of diligent
 9   efforts the milestones would have been achieved.
10           THE COURT:  Yes, but in terms of monetary
11   amounts, if plaintiff were to succeed on the merits in
12   terms of what they would recover, it would be
13   determined by the contracts, is that right?
14           MR. NEUWIRTH:  The milestone amounts are
15   fixed, Your Honor.
16           THE COURT:  So is there any other amounts that
17   would be in controversy?
18           MR. NEUWIRTH:  There is an attorneys' fee
19   claim in the case.
20           THE COURT:  Okay, well you don't need a
21   deposition, well, you might.
22           MR. NEUWIRTH:  We may.  We might, and, again,
23   I don't think the plaintiffs would characterize it as
24   their main claim in the case, but it is a separate
25   count. There is a claim that we pay all of their
```

```
 1                        PROCEEDINGS              17
 2  attorneys' fees in this case.
 3          THE COURT:  Right.  Well attorneys' can be
 4  addressed in a second phase I would think, but go
 5  ahead.
 6          MR. NEUWIRTH:  So there is what I would
 7  characterize as that damages or causation issue, which
 8  I think is fair to explore. As for relevance, Your
 9  Honor, I think I answered it directly. What we have
10  here is Stonehill which was --
11          THE COURT:  Well it's the same answer every
12  time that I've asked this question, and I remember
13  previously, but go ahead.
14          MR. NEUWIRTH:  Your Honor, I think it is
15  relevant that when you have the driving force behind
16  the litigation that is the plaintiff in all but name,
17  that we are entitled to probe what that person thinks
18  or that entity thinks about this litigation. There are
19  all sorts of questions we could ask in that regard
20  that would get at what they think about the merits of
21  the claims.  That's relevant, just like it would be
22  relevant if we asked that of a plaintiff.
23          These are hedge funds that bought these CVRs
24  in the aftermarket, what do they think about the
25  actual claims?  Do they actually think they have legs
```

1
2  or is this just an investment opportunity based on
3  something else? That's relevant.  Counsel said that
4  what we want to do is paint the hedge funds as big,
5  bad hedge fund people or something.
6          THE COURT:  You can do that without a
7  deposition.
8          MR. NEUWIRTH:  By the way, I think we have the
9  right, and we can fight about this later at trial and
10 they can try to exclude this, I think we have the
11 right to try to put a face on who is behind this
12 litigation, I think that's completely appropriate for
13 discovery. This would be an unusual, unusual case if
14 we can't at least try to put on that evidence if we so
15 choose. They can try to exclude it in limine or
16 otherwise as we get towards trial, but now to try to
17 take a deposition is totally appropriate, Your Honor.
18 This is an unusual situation where in a case of this
19 magnitude, with over a billion dollars at stake
20 alleged in damages, that we're arguing about whether
21 we can take a second deposition of an entity that is
22 here in New York. And we think, again, Mr. Gilman is
23 absolutely right, I don't designate 30(B)(6)
24 witnesses, but we think it's probably one person.
25          THE COURT:  Right.  Let me just ask you

PROCEEDINGS                    19

1  something, I'm looking at the subpoena, so just for

2  instance, why is due diligence done by (indiscernible)

3  irrelevant, that's in number five, I'm just pulling

4  that one out of the hat, I mean it's not like I'm

5  focusing on it.

6         MR. NEUWIRTH:  Again, Your Honor, I think it

7  goes to the issue that I identified, which is how

8  Stonehill feels about the strength or weaknesses of

9  these claims and I think that's directly relevant to

10 the underlying issue of the case.  Just like an

11 admission from a plaintiff would be.

12        THE COURT:  Right.  So if he was enterprising

13 and wanted to look it personally, he might look into

14 the contract, make some judgments on it, and come to

15 some conclusions. He might have done some

16 investigation, turned up evidence related to it. I'm

17 going to assume, and it doesn't mean you don't get

18 your deposition, but I'm just going to assume that

19 most likely he consulted with counsel and it's all

20 work product, but who knows.

21        Now I actually agree with the defendant that

22 they're entitled to ask questions of whoever is

23 essentially behind the litigation and ask questions

24 along the lines of what they have set forth. It's not

PROCEEDINGS                    20

a tremendous burden in the scheme, it's not even a

real burden in the scheme of this case, the amount at

issue and the amount of discovery that has taken place

on one side versus the other. The defendant has had

opportunity for one deposition, that's what they've taken.

They should be allowed to ask the person with the real

interest or representative of the real interest, so I'm

going to permit the depositions to go forward.

        Mr. Gilman.

        MR. GILMAN:  Your Honor, this is manufactured

in the following way. The CVR contract provides that

upon request the trustee shall be reimbursed its out

of pocket expenses. Sanofi refused to honor that

obligation. We litigated it at the beginning of the

case.

        THE COURT:  Right.

        MR. GILMAN:  It's an issue that is going to be

adjudicated at the end of the case. There would be no

funding holders if they had honored that obligation.

There would be no alleged driving force if they had

honored that obligation.  Stonehill was not a CVR

holder at the time of the merger. Stonehill wasn't a

CVR holder at the time the contract was drafted, and

signed, and executed.  And whether Stonehill is worthy

| 1 | PROCEEDINGS                           21 |

2  or unworthy has nothing to do with whether Sanofi has

3  honored its contractual obligations.

4         And that may be, and that would be an issue

5  for whether the evidence will come in at trial, but

6  there are questions that can be asked that potentially

7  get a matter that might touch upon issues in the case,

8  and they may not. I mean the questions may result in

9  attorney-client, they may result in work product, they

10 may result in no content, but they're entitled to find

11 out.  And so I'm going to allow them go forward.

12        Yes, Mr. Paradise.

13        MR. PARADISE:  I'm sorry, I apologize, Judge,

14 here was one thing I did want to point out, it may be

15 irrelevant but I do think it's important. Stonehill

16 was not even involved at the time this lawsuit was

17 initiated and filed. It was a different trustee, I

18 don't know who was behind it, but Stonehill wasn't.

19 And the other point is --

20        THE COURT:  It may end up being a very short

21 deposition.

22        MR. PARADISE:  Well the other thing I would

23 ask, Your Honor, is that we narrow the scope. I mean

24 there's seven topics here and they want to get into

25 Stonehill's trading method, there are things here that

1

2   are proprietary and at the heart of a hedge fund. And

3   those are things that every hedge fund I've ever

4   worked with, and I'm sure Your Honor has encountered

5   it, is very protective of.

6           I also think that some of these topics do not

7   have to be included, we can limit the scope or the

8   time of this deposition.

9           THE COURT:  Give me an example of something

10  because I'm skeptical that it's what defendant has in

11  mind in asking about, but go ahead.

12          MR. PARADISE:  Well I think your decision to

13  hold a transacting CVR involves, you know, the inner

14  workings of theirs in terms of how they analyze a

15  portfolio holding, et cetera, it's well past the point

16  in time --

17          THE COURT:  Well it may be a valid reason to,

18  I'm sorry, let me back up.  There may be reasons to

19  ask about how they analyzed these CVRs and what was

20  the analysis for determining to invest in them. And

21  why did they value it at what they do, why do they

22  think it's going to produce a certain value. Did they

23  discount the chances of success in making the

24  determination of how to value and invest. And what did

25  they base that on, if it wasn't with counsel, maybe it

2  was for some other reason. So there are questions that

3  are relevant here.

4          MR. PARADISE:  With all due respect, as Mr.

5  Gilman articulated and I did, as well, I'm not sure

6  how any of that is going to be relevant ultimately in

7  this case.

8          THE COURT:  It may not.

9          MR. PARADISE:  The other suggestion, Your

10 Honor, is they know Mike Stern is the principal

11 involved and we don't dispute that, how about we just

12 have Mike Stern be deposed and not have to have a

13 30(B)(6) and that extra burden that we have to go and

14 interview people and educate them. Or have them pay

15 for Stonehill --

16         THE COURT:  Well, so --

17         MR. PARADISE:  Stonehill is not a party in the

18 proportionality issue, with all due respect, we've

19 taken no discovery in this case.

20         THE COURT:  I understand that, but if

21 Stonehill were to produce a 30(B)(6) witness,

22 defendant seems to be saying in most likelihood it

23 would be Mr. Stern, is that true, not true?

24         MR. PARADISE:  In all likelihood it would be

25 Mr. Stern, but as I said earlier, we still have to

1                           PROCEEDINGS                    24

2  educate Mr. Stern on these topics and make sure he has

3  any knowledge that's in the organization that he

4  doesn't personally possess.

5           THE COURT:  Sure.  Well, within reason, and I

6  think, particularly if he is going to be the 30(B)(6)

7  witness he should be able to offer testimony, both

8  individually and on a 30(B)(6) basis.

9           MR. PARADISE:  That, I'm sure, we'll be able

10 to work out.

11          THE COURT:  I think so.

12          MR. PARADISE:  Thank you, Your Honor.

13          THE COURT:  All right, anything else, any

14 other issues we need to address since we're here?

15          MR. NEUWIRTH:  Your Honor, there is one issue

16 that I don't think is ripe for today.

17          THE COURT:  Okay.

18          MR. NEUWIRTH:  But I want to at least put it

19 on the Court's radar.  Mr. Gilman referenced expert

20 discovery and we are in the middle of expert

21 discovery, that's absolutely right.  Plaintiff, in

22 accordance with the schedule, served seven expert

23 reports at the first date, which was January 25.  We

24 then served seven expert reports of our own that came

25 from six experts on the second date in the schedule,

PROCEEDINGS                     25

which was April 5th of 2019. The next date that's

coming up is June 14 for plaintiffs to serve rebuttal

reports, if any.  There may be a dispute bubbling up

as to what rebuttal reports actually mean.

THE COURT:  Sure.

MR. NEUWIRTH:  We think the plain reading of

the stipulation and certainly the intent behind the

stipulation, which has been the stipulation for some

time in this case, is that plaintiffs were going to go

first and identify and serve expert reports, we were

then going to go second and respond to their expert

reports and serve any reports of our own, and then if

there was any subject matter that was new that they

didn't have an opportunity to have an expert on, they

would then serve rebuttals.

It's possible, but I don't know based on our

discussions, that on June 14 what we could see is more

in the nature of seven replies.

THE COURT:  Right.  Well let's not speculate,

let's see what happens. This is an issue that is not

uncommon in these litigations, so let's address it

when and if it arises.

MR. NEUWIRTH:  That's fine, Your Honor. And

the other piece to it, and again, I just wanted to put

```
 1                           PROCEEDINGS                          26
 2   a marker on this  because I didn't want, if it becomes
 3   an issue, and I hope it doesn't, I didn't want Your
 4   Honor to say why didn't you mention this when I saw
 5   you last time.
 6            THE COURT:  Sure, no, no.
 7            MR. NEUWIRTH:  There is a final stage for
 8   depositions that permits us to take depositions of
 9   their rebuttal experts which is about a month long. To
10   the extent we get seven expert reports on whatever
11   date, I'm not asking for an extension, but this goes
12   to why we read the stipulation, among other reasons,
13   as really providing only for rebuttal reports on June
14   14, not replies. Because the notion that we were going
15   to take seven expert depositions in a month period is
16   A) not what the document says; B) not what we would
17   have ever agreed to.
18            But in any event, that's the issue that's out
19   there, and we'll see what happens on June 14.
20            THE COURT:  Okay.  All right, anything else?
21   No, all right, we are adjourned, thank you.
22            (Whereupon, the matter is adjourned.)
23
24
25
```

27

C E R T I F I C A T E

    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of UMB Bank, NA v. Sanofi, Docket #15cv8725, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

             Carole Ludwig

Date:    May 16, 2019