# Exhibit D

Page 1

1        UNITED STATES DISTRICT COURT
2      FOR THE SOUTHERN DISTRICT OF NEW YORK
3
4  UMB BANK, N.A., as Trustee,
5          Plaintiff,              Case No.
                                   15 Civ. 08725 (GBD)
6     vs.
7  SANOFI,
8          Defendant.
   _____
9
10
11
12
13
14
15      VIDEOTAPED DEPOSITION OF RICHARD CHIN, M.D.
16             Redwood Shores, California
17              Monday, March 11, 2019
18
19
20
21
22
23  REPORTED BY:
24  CYNTHIA MANNING, CSR No. 7645, CLR, CCRR
25  JOB NO. 156491

1            I -- let me see.  So baseline EDSS.  I'm
2     trying to remember.  You know, that could be several
3     different analyses.  So I don't remember which
4     analyses were sent in.  Typically, if you don't --
5     there might have been.  I -- yeah, it may not --
6        Q.   You don't recall?
7        A.   Yeah.
8        Q.   Okay.  Paragraph 32.  You state that:
9             "The failure to remove all reasonably
10            identifiable potential sources of bias
11            through statistical analysis is
12            inconsistent with how pharmaceutical
13            companies normally conduct the most basic
14            clinical trial analyses and submission."
15            And I just want to make sure I understand
16    you.
17            Are you suggesting -- or are you saying
18    here that companies are ordinarily successful at
19    eliminating bias in their submissions?
20       A.   What I'm saying is they try their best to
21    eliminate the bias.
22       Q.   And just because you address a source of
23    bias does not necessarily mean that it will be
24    persuasive with the FDA?
25       A.   Correct.

1  confidence in the drug.
2      Q.  Okay.  In 140, you indicate that:
3         "When FDA revoked fast track, Sanofi should
4         have initiated either a disability
5         verification study or a PPMS study"?
6      A.  Yes.
7      Q.  Now, fast track is not necessary to get
8  approval; right?
9      A.  Correct.
10      Q.  Okay.  And PPMS would be a new indication;
11  correct?
12      A.  Yes.
13      Q.  That would not be data that would be
14  supportive of the ongoing file under review --
15         MR. MINTZ:  Objection to form.
16  BY MR. D'ALOIA:
17      Q.  -- correct?
18         MR. MINTZ:  Objection to form.
19         THE WITNESS:  That would not -- can you
20  repeat that?
21  BY MR. D'ALOIA:
22      Q.  That would not be -- withdrawn.  Let me
23  rephrase.
24         Data from a PPMS study would not be
25  supportive of the ongoing file under review;

1  correct?
2          MR. MINTZ:  Objection to form.
3          THE WITNESS:  It might have.  It depends on
4  when the data was available.  But I think that it's
5  just the fact that they started a PPMS study, I
6  think, would have signaled to the FDA that the
7  sponsor had confidence in the product, and it might
8  have affected the review.
9  BY MR. D'ALOIA:
10     Q.  So you're suggesting that when sponsors
11  signal confidence in their product, that the chances
12  of approval are increased?
13         MR. MINTZ:  Objection to form.
14         THE WITNESS:  They can.  Yes.
15  BY MR. D'ALOIA:
16     Q.  Again, but the more money a sponsor throws
17  at clinical trials, the more likely it is that the
18  FDA will approve product?
19         MR. MINTZ:  Objection to form; entirely
20  misstates his prior testimony.
21         THE WITNESS:  So there is a correlation
22  between amount of money you spend on a product and
23  approval, although that's not exactly what I'm
24  saying, yes.
25  //